USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT __________ No. 91-1694 NORMA F. ROTH, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. __________ ERRATA SHEET ERRATA SHEET The opinion of the Court issued on December 30, 1991, is amended as follows: On page 6, line 5, "actions[s]" should be corrected to read "action[s]." _________________________ No. 91-1694 NORMA F. ROTH, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _________________________ Norman Jackman, with whom Martha M. Wishart and Jackman & _______________ _________________ _________ Roth were on brief, for appellant. ____ Roberta T. Brown, Assistant United States Attorney, with _________________ whom Judith S. Yogman, Acting United States Attorney, was on _________________ brief, for appellee. _________________________ _________________________ SELYA, Circuit Judge. Concluding that the plaintiff's SELYA, Circuit Judge. ______________ complaint failed to state a claim upon which relief could be granted, Fed. R. Civ. P. 12(b)(6), the United States District Court for the District of Massachusetts dismissed an action brought by the plaintiff, Norma F. Roth, against the United States.1 Roth appeals from the order of dismissal. We affirm. I. I. We eschew an exegetic statement of the facts, opting instead to discuss the averments of the complaint, to the extent required, in connection with the body of the appeal. We do, however, pause to reflect on the standard that governs our oversight. It is settled that "[a]ppellate review of a dismissal under Fed. R. Civ. P. 12(b)(6) is plenary." Miranda v. Ponce _______ _____ Federal Bank, ___ F.2d ___, ___ (1st Cir. 1991) [No. 90-2214, ____________ slip op. at 3]. We, like the district court, are bound by the principle that a civil complaint seeking money damages should not be jettisoned for failure to state an actionable claim unless it ____________________ 1Roth's action was originally brought against a government official, Anne Harlan. On motion, the United States was substi- tuted as party defendant pursuant to 28 U.S.C. 2679(d)(1) (1988). The plaintiff has not appealed from the order of substitution. In any event, the matters complained of Harlan's statements and actions, described infra were sufficiently _____ workplace-related that, even without the order of substitution, dismissal would have been appropriate on preemption grounds, for essentially the reasons stated infra. See, e.g., Bush v. Lucas, _____ ___ ____ ____ _____ 462 U.S. 367, 388-90 (1983) (holding constitutional tort action against supervisor to be preempted under Civil Service Reform Act of 1978); Berrios v. Department of the Army, 884 F.2d 28, 32 (1st _______ ______________________ Cir. 1989) (holding state-law defamation claims against supervisors to be likewise preempted); Broughton v. Courtney, 861 _________ ________ F.2d 639, 644 (11th Cir. 1988) (similar). 3 plainly appears that the plaintiff can prove no set of facts thereunder which would entitle her to recover. Id. at ___ [slip ___ op. at 3-4], citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). ______ ______ In performing the requisite tamisage and assessing sufficiency, a court must accept as true the complaint's well-pled factual averments, excluding, however, "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d _______________ __________________ 49, 52 (1st Cir. 1990). At the same time, the court must draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory. Miranda, _______ ___ F.2d at ___ [slip op. at 2]; Dartmouth Review v. Dartmouth _________________ _________ College, 889 F.2d 13, 16 (1st Cir. 1989). In the last analysis, _______ a plaintiff is obliged to set forth in her complaint "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d ______ _______________ 513, 515 (1st Cir. 1988). If she has succeeded in this task, dismissal will not lie under Rule 12(b)(6). II. II. The plaintiff's complaint was brought in two counts, both growing out of the same nucleus of operative facts. One count sought money damages. The other count sought injunctive relief. We hold that, to the extent the suit is still live, see ___ infra note 2, it is preempted by the Civil Service Reform Act of _____ 1978, Pub. L. No. 95-454, 92 Stat. 1111 (1978) (CSRA), codified 4 in various sections of 5 U.S.C. A. A. __ At all times material hereto, Roth served as Branch Manager, Labor Relations, in the Burlington, Massachusetts, office of the Federal Aviation Administration (FAA). The situation of which she complains arose out of actions taken by her supervisor, Anne Harlan, the FAA's Division Manager. According to Roth, Harlan bore a grudge against her dating back to 1977 a grudge stemming from an incident that occurred when both women were working in the private sector. Roth averred that, once fate reunited the two women, this time as FAA officials, Harlan became a constant thorn in her side. The relationship hit rock bottom in the 1989-1990 time frame, when the FAA considered discharging an employee named Richard Fontes. Roth was involved in the termination proceedings. She alleged that, thanks to Harlan, the proceedings took on a highly irregular cast; that Fontes' constitutional rights were imperilled; that Harlan attempted to enlist Roth's cooperation in a wholly improper course of conduct; that Roth's refusal to knuckle under enraged Harlan; and that Harlan proceeded to complain loudly, openly, and unfairly about Roth's job performance. In Roth's view, these slurs caused her grievous harm. Believing Harlan's utterances and associated conduct to be actionable, Roth sued for damages.2 ____________________ 2Roth also asked that the district court issue "an injunction prohibiting [Harlan] from taking any action to coerce [Roth] into violating the Constitution and/or laws of the United 5 B. B. __ The CSRA was meant to provide a comprehensive framework for personnel policies governing federal employees. See Saul v. ___ ____ United States, 928 F.2d 829, 833 (9th Cir. 1991), citing S. Rep. _____________ No. 969, 95th Cong., 2d Sess. 3, 53 (1978); Montplaisir v. ___________ Leighton, 875 F.2d 1, 3 (1st Cir. 1989). In the course of that ________ endeavor, Congress set out procedures for challenging "prohibited personnel practices." 5 U.S.C. 2302. The prohibited personnel practices covered by the CSRA include "personnel actions" that transgress the law's merit system principles merit system principles which require the federal sovereign to treat its employees fairly and shield them from capricious actions, ____________________ States and/or the rules of the FAA, and to remove [Harlan] from her position as Division Manager to prevent her from further violations of the constitutional rights of employees of the FAA." After filing suit, however, Roth resigned from the FAA, effective June 7, 1991. Her quest for injunctive relief is, therefore, moot; from June 7 forward, she had no further stake in the agency's operation and "lack[ed] a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969); see ______ _________ ___ also Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974) ("The ____ _______ ________ rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). Since Roth is no longer in the FAA's employ, any attempts to pressure her to act in illegal or unconstitutional ways would be pointless. Thus, Roth's resignation quelled any "reasonable expectation . . . that the alleged violation will recur." County of Los Angeles v. Davis, ______________________ _____ 440 U.S. 625, 631 (1979). Moreover, while Roth can continue to pursue her claim for damages caused by Harlan's past conduct, accepted principles of standing foreclose her, now that she has become a private citizen, from maintaining a suit to oust Harlan or curb Harlan's excesses in order to protect others or vindicate the public weal. See, e.g., Warth v. Seldin, 422 U.S. 490, 499 ___ ____ _____ ______ (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); Gordon v. ______ Crouchley, 554 F. Supp. 796, 798 (D.R.I. 1982) (similar). _________ 6 personal vendettas, favoritism, and the like. See Saul, 928 F.2d ___ ____ at 833. The thrust of Roth's allegations is that the combination of Harlan's aspersions and conduct demeaned Roth and subjected her to arbitrary action. Thus, the threshold question is whether Harlan's antics, as Roth portrayed them, would qualify as a prohibited personnel practice within the contemplation of the CSRA.3 Under the CSRA, personnel actions include "corrective actions[s]." 5 U.S.C. 2302(a)(2)(A)(iii). The corrective action category is a capacious one, encompassing a wide variety of conduct affecting federal employees. See Saul, 928 F.2d at ___ ____ 834. The slanderous utterances that Roth bemoans, while allegedly untrue, nevertheless concerned her job performance. Those comments reflected a profound disagreement between Harlan and Roth about the manner in which Fontes' termination proceedings and, perhaps, termination proceedings generally should appropriately be conducted. Harlan's behavior, as described in the complaint, to the extent that Roth retains standing to pursue it, see supra note 2, was similarly job- ___ _____ related. In sum, an objective assessment of the complaint leaves no doubt that Roth was attempting to sue over utterances and associated acts which reflected dissatisfaction with her work within the FAA and which focused upon substantial conflicts anent agency policy and procedures. For CSRA purposes, then, Roth's ____________________ 3Roth has not questioned the applicability of the CSRA to federal employees of her rank and type. 7 complaint, no matter how generously it might be read, alleged a prohibited personnel practice, that is, a personnel action violative of the merit principles. Accord Saul, 928 F.2d at 834. ______ ____ This conclusion sounds the death knell for Roth's statement of claim. It is now beyond serious question that the CSRA preempts state-law challenges to prohibited personnel practices in the federal workplace. See Berrios v. Department of ___ _______ _____________ the Army, 884 F.2d 28, 32 (1st Cir. 1989) (holding that, where _________ the CSRA pertains, defamation claims touching upon prohibited personnel practices are preempted); Montplaisir, 875 F.2d at 8 ___________ (holding former government employees' private tort action against union lawyers to be preempted by "the comprehensive nature of the [CSRA's] remedial scheme"); Broughton v. Courtney, 861 F.2d 639, _________ ________ 643 (11th Cir. 1988) ("If plaintiff's state law claims . . . are within the scope of the coverage of the CSRA, then the actions are preempted by the CSRA."). As we stated on an earlier occasion: The legislative history of the CSRA establishes beyond dispute that Congress intended that statute to provide an exclusive procedure for challenging federal personnel decisions. . . . "The history and intent of the CSRA plainly prefigures that collateral district court jurisdiction would impede the ideals of fast, efficient management and greater uniformity in the judicial review process." Berrios, 884 F.2d at 31-32 (quoting Tucker v. Defense Mapping _______ ______ ________________ Agency, 607 F. Supp. 1232, 1240 n.6 (D.R.I. 1985)). It follows ______ inexorably that Roth's claim is preempted. 8 C. C. __ To this point, the drill is straightforward. Roth, however, has a fallback position. She says that, in her case, administrative remedies have been almost, if not entirely, foreclosed by the bodies from whom she has sought succor, viz., the Merit Systems Protection Board and its Office of Special Counsel (both citing lack of jurisdiction). In addition, she points out that administrative remedies, even if available, make no provision for damage awards to deserving complainants. The short answer to these assertions is that they are nihil ad rem. As to Roth's complaint about the lack of an _____ __ ___ accessible administrative mechanism, we agree with the Ninth Circuit that, even where the CSRA provides no guaranteed forum, "preemption of . . . work-related tort claims is necessary to fulfill congressional intent." Saul, 928 F.2d at 843. As to ____ Roth's grievance concerning the unavailability of damage awards, Montplaisir controls. There, in addressing a near-identical ___________ remonstrance, we responded: "That injured employees might be left without a means of recovering money damages is a necessary consequence of the [comprehensive nature of the CSRA]. Congress, in its wisdom, was fully entitled to prefer administrative enforcement to civil trials." Montplaisir, 875 F.2d at 5. ___________ We will not paint the lily. We suggest that the Supreme Court, in its landmark decision construing the CSRA, has itself provided a powerful refutation of Roth's lack-of-remedy argument: 9 The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy . . . . That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy. . . . Bush v. Lucas, 462 U.S. 367, 388 (1983). On the basis of Bush, ____ _____ ____ as explicated in Berrios, Montplaisir, and Saul, we find Roth's _______ ___________ ____ lamentations about the inadequacies of administrative relief under the CSRA to be an exercise in irrelevancy. III. III. Since civil service reform became a legislative reality in 1978, the Supreme Court "has jealously guarded CSRA against inconcinnous judicial incursions." Montplaisir, 875 F.2d at 3; ___________ accord Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991) ______ ______ _____________ (stating that "Congress's purpose in enacting the CSRA was to channel grievances and disputes arising out of government employment into a single system of administrative procedures and remedies"). We are obliged to do no less. Considering the CSRA's breadth and the comprehensive, integrated nature of its remedial scheme, we believe the field is rather fully occupied, leaving little, if any, room for state-law tort anodynes. Indeed, "[p]erforming the requisite analysis . . . leads to the 10 inescapable conclusion that Congress intended to preempt state- law tort actions." Montplaisir, 875 F.2d at 5. ___________ We need go no further. In general, a federal employee whose position comes within CSRA's reach may seek redress for the untoward effects of a prohibited personnel practice only through the panoply of remedies that CSRA itself affords. Roth's case, as she has stated it, is completely engulfed within this generality.4 Affirmed. Affirmed. ________ ____________________ 4In view of our disposition of this matter, we need not consider the government's alternative asseveration that the plaintiff's complaint, insofar as it seeks an award of damages, is also barred under the Federal Tort Claims Act, more specifically, 28 U.S.C. 2680(h) (precluding maintenance against the federal sovereign of "[a]ny claim arising out of . . . slander"). By the same token, it would be supererogatory for us to decide the plaintiff's motion to supplement the record; with or without supplementation, the show has closed. 11