March 19, 1993 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-2201

 JOHN F. DESMOND,

 Plaintiff, Appellant,

 v.

 DEPARTMENT OF DEFENSE,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Mark L. Wolf, U.S. District Judge]
 

 

 Before

 Selya, Cyr and Boudin,
 Circuit Judges.
 

 

 John F. Desmond on brief pro se.
 
 A. John Pappalardo, United States Attorney, William L.
 
Parker, Special Assistant United States Attorney, and Scot
 
Gulick, Assistant General Counsel, Defense Mapping Agency, on
 
brief for appellee.

 

 

 Per Curiam. The question before us is whether the
 

district court correctly granted summary judgment in favor of

defendant on various claims involving the termination of

plaintiff's employment by the Defense Mapping Agency ["DMA"].

As we find that the Civil Service Reform Act provides the

exclusive procedure and remedies governing these claims, we

affirm the district court's disposition of the case.

 Our review of a district court's grant of summary

judgment is plenary. See Garside v. Osco Drug, Inc., 895
 

F.2d 46, 49 (1st Cir. 1990). Summary judgment is appropriate

where the record reflects "no genuine issue as to any

material fact and ... the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). A

perusal of the entire record, including the numerous exhibits

appended to the plaintiff's complaint, the parties'

affidavits, and motion papers, reveals the following sequence

of events. 

 Appellant was employed by DMA as a Marine

Information Specialist. His appointment was effective

September 11, 1989, subject to a one year probationary

period. On December 29, 1989, DMA terminated the employment

because, according to DMA, appellant refused to accept a

security clearance. A security clearance, DMA maintains, is

a requirement of the position. 

 - 2 -
 -2-

 Appellant appealed his removal to the Merit

Systems Protection Board ["MSPB"] on the ground that the

manner in which his employment had been terminated, without

notice and an opportunity to answer, violated agency

regulations. See 5 C.F.R. 315.805 (requiring such
 

procedures where an employee is dismissed for a reason

arising out of pre-employment events). 

 Appellant acknowledged that after he was hired he

refused to sign the document necessary to accept a security

clearance. He also admitted sending a letter to the Director

of the DMA in December, 1989, stating, "I do not wish a

security clearance now or at any further date." However, he

argued that this refusal was the product of a pre-appointment

condition, to wit, a lack of knowledge on his part that a

security clearance was required, attributable to the DMA's

representations to that effect when he was offered the job. 

 Appellant did not deny signing a "Statement of

Understanding," the day his employment began, acknowledging

the security clearance requirement. But he implied that the

manner in which the DMA presented the "Statement of

Understanding" to him, amid many other personnel documents,

caused him to overlook its contents. Finally, in an

affidavit directed to the MSPB, appellant stated, "If I had

 - 3 -
 -3-

been informed that the security clearance was mandatory I

would have accepted the clearance." 

 The MSPB determined that appellant's employment

had been terminated for a "post-appointment" reason. Since,

with few exceptions, the MSPB has no jurisdiction over such

probationary period terminations, it dismissed the appeal.

See 5 C.F.R. 315.806(b)-(d). The MSPB also declined, in
 

light of this lack of jurisdiction, to consider appellant's

argument that his First Amendment rights had been violated

because his termination followed on the heels of his letter

complaining about the security clearance requirement. MSPB

No. DC 315H9010170 (Feb. 20, 1990). The MSPB's decision was

affirmed on appeal to the circuit court, and the Supreme

Court denied certiorari, and a rehearing. Desmond v.
 

Department of Defense, 915 F.2d 1584 (Fed. Cir. 1990), cert.
 

denied, 111 S. Ct. 792 (1991), reh'g denied, 111 S. Ct. 1030
 

(1991). 

 Appellant then filed this lawsuit in the district

court. In a complaint, and then an amended complaint, both

filed pro se, appellant changed his factual theories.
 

Appellant's first complaint alleged that the DMA originally

hired him for a non-sensitive position. In December, 1989,

however, he discovered that he was the object of covert

surveillance because, he alleged, the DMA was considering him

for a "collateral job assignment" requiring a security

 - 4 -
 -4-

clearance. In contrast to the affidavit he filed with MSPB

("if I had been informed ... I would have accepted the

clearance"), appellant's district court complaint asserted

that "he did not wish any type of security clearance" because
 

of a prior experience in the Navy when, he said, he had been

exposed to nerve gas and held incommunicado against his

wishes. He attributed the DMA's subsequent termination of

his employment solely to retaliation for his December, 1989

letter objecting to the security clearance.1 

 In his amended complaint appellant again changed

his factual theory.2 This time, despite his earlier

characterization of the December, 1989 letter as a product of

misunderstanding, his amended complaint echoed the letter's

contents. It alleged that the DMA had hired appellant for

the very purpose of conducting a "witch hunt" against him,

 

1. In addition to the MSPB action, appellant's complaint
also alleged that he had filed an action with the EEOC which
was dismissed as untimely. Exhibits submitted with
appellant's various motion papers also refer to one or more
additional actions involving the same facts, brought before
the State's unemployment compensation office and the state
courts. In a "Reply to Defendant's Answer," appellant also
refers to two additional appeals to the MSPB involving
denials of employment by other government agencies connected
to the instant termination. 

2. The record before us does not indicate a direct ruling
on appellant's motion to amend his complaint. Since the
district court referred to the amended complaint in its
decision dismissing the case, we read its opinion as
effectively granting the motion to amend and treating
defendant's summary judgment motion as directed to both
complaints. 

 - 5 -
 -5-

"under the disguise of a security clearance investigation."

This "witch hunt," appellant said, was a response to

complaints he had made to Congress about his treatment in the

Navy, where, he reiterated, he had been exposed to a

chemical-biological nerve agent and "held political prisoner

to cover-up that fact." Moreover, appellant's amended

complaint now seemingly denied the genuineness of his

signature on the "Statement of Understanding," alleging it

was "obviously" an altered or forged document.

 Without characterizing apellant's claims precisely,

it appears he is now seeking to assert tort and contract

claims, including claims for violations of his first

amendment, privacy and due process rights. See generally
 

Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics,
 

403 U.S. 388 (1971). Appellant demands reinstatement, back

pay plus interest, a full evidentiary hearing on the merits

of his termination, and $100,000 in compensatory and punitive

damages. 

 Appellee challenged the legal sufficiency of

appellant's claims on numerous grounds, including preemption,

res judicata and collateral estoppel, sovereign immunity,

failure to file a proper claim under the Federal Tort Claims

Act, and the absence of an enforceable employment contract.

We do not need to reach most of these issues, however,

because no matter how appellant's claims are styled, they are

 - 6 -
 -6-

precluded by the exclusivity of the remedies and procedures

provided in the Civil Service Reform Act of 1978 ["CSRA"] and

the Whistleblower's Protection Act of 1989. 

 "The CSRA was meant to provide a comprehensive

framework for personnel policies governing federal

employees." Roth v. United States, 952 F.2d 611, 614 (1st
 

Cir. 1991); see also Bush v. Lucas, 462 U.S. 367 (1983).
 

 The legislative history of the CSRA
 establishes beyond dispute that Congress
 intended that statute to provide an
 exclusive procedure for challenging
 federal personnel decisions .... The
 history and intent of the CSRA plainly
 prefigures that collateral district court
 jurisdiction would impede the ideals of
 fast, efficient management and greater
 uniformity in the judicial review
 process.

Roth, 952 F.2d at 615 (quoting Berrios v. Department of the
 

Army, 884 F.2d 28, 31-32 (1st Cir. 1989)). See also
 

Schweiker v. Chilicky, 487 U.S. 412, 427-28 (1988). 
 

 Exclusivity of the remedial scheme provided by the

CSRA is necessary to effectuate the statutory design,

"balanc[ing] the legitimate interests of the various

categories of federal employees with the needs of sound and

efficient regulation." United States v. Fausto, 484 U.S. 439
 

(1988). To avoid "inconcinnous judicial incursions" into

this carefully constructed regulatory structure, CSRA has

been held to preclude a wide variety of Bivens-type actions
 

and other federal law claims. Montplaisir v. Leighton, 875
 

 - 7 -
 -7-

F.2d 1, 3 (1st Cir. 1989) (citing cases); see also Rollins v.
 

Marsh, 937 F.2d 134 (5th Cir. 1991) (Bivens claims alleging
 

violations of First, Fourth, Fifth, Sixth and Fourteenth

Amendments and Privacy Act violations); Jones v. Tennessee
 

Valley Authority, 948 F.2d 258 (6th Cir. 1991) (Bivens action
 

alleging retaliation for whistleblowing and civil rights

action under 42 U.S.C. 1985(1)); Kotarski v. Cooper, 866
 

F.2d 311 (9th Cir. 1989) (Bivens claims brought by
 

probationary employee alleging violations of privacy and free

speech rights). In addition, CSRA has been held to preempt a

variety of state common law claims. Roth, 952 F.2d at 611
 

(Bivens and state law tort claims alleging retaliation for
 

refusal to cooperate in improper conduct, citing cases); Saul
 

v. United States, 928 F.2d 829 (9th Cir. 1991) (Bivens
 

claims, labor, and state common law claims). 

 Although CSRA does not provide probationary

employees with the same remedies and protections accorded

fully tenured employees, the difference is due to Congress'

deliberate choice in balancing the employee's need for

constitutional protection against the public's interest in an

efficient and disciplined federal workforce. See Kotarski,
 

866 F.2d at 311; Saul, 928 F.2d at 837, 840-41. Management
 

concerns necessarily require great flexibility in determining

to whom to grant permanent status. Kotarski, 866 F.2d at
 

312. Probationary employees are accorded certain procedural

 - 8 -
 -8-

protections, however, where termination is for pre-employment

reasons. See 5 C.F.R. 315.805, 315.806(c). A direct
 

appeal to the MSPB is also permitted to challenge actions

based on "partisan political affiliation or marital status."

5 C.F.R. 315.908(b). 

 Congress has recently sought to strengthen the

administrative protections accorded probationary employees

who speak out against mismanagement and waste through the

"Whistleblower's Protection Act" of 1989. With the

amendments included in that Act, Congress provided "what it

considers adequate remedial mechanisms" for redressing

constitutional violations. Kotarski, 866 F.2d at 312.
 

Probationary employees are given the right to seek corrective

action for prohibited personnel practices through an

independent Office of Special Counsel. The Special Counsel

is empowered to receive complaints, investigate, and, where

there are reasonable grounds, seek correction of a variety of

constitutional violations, including, notably, complaints of

abuse of authority. 5 U.S.C. 1211, 1213, 1214(a)(1)(2),

1216, 2302(b)(8). At the termination of the Special

Counsel's inquiry, the probationary employee may appeal to

the MSPB. And if the Special Counsel fails to terminate his

inquiry within 120 days after receiving the complaint, the

probationary employee may appeal directly to MSPB. 5 U.S.C.

 1214(2)(B)(3), 1214(3). 

 - 9 -
 -9-

 Appellant points to the jurisdictional dismissal of

the claim he filed with the MSPB as demonstrating that,

despite this scheme, in practice the CSRA provides no means

to redress the constitutional violations alleged in his

district court complaints. But, we do not understand the

agency's action in this way. First, the MSPB's dismissal was

based on facts and theories very different from those alleged

here. Second, even if, properly presented, the MSPB would

have had no jurisdiction over an appeal based on the instant

factual theories, (although appellant had the right to seek

relief from the Special Counsel's office). 

 Appellant also denies the Special Counsel's actual

authority citing a telegram he sent to the Special Counsel

which allegedly was not answered. The meaning and relevance

of the allegations in appellant's telegram are far from

clear. But even indulging appellant's interpretation, and

viewing the telegram as a formal complaint, it does not prove

his point. The Act clearly permitted appellant a further

administrative avenue for pursuing constitutional complaints,

regardless of any inadvertent inaction by the Special

Counsel's office. 

 Although Congress has vested discretion in the

Office of Special Counsel and the MSPB, we have elsewhere

observed that "even where the CSRA provides no guaranteed

forum, preemption of ... work-related tort claims is

 - 10 -
 -10-

necessary to fulfill congressional intent." Roth, 952 F.2d
 

at 615 (quoting Saul, 928 F.2d at 843). Appellant's showing
 

falls far short of demonstrating that the CSRA's regulatory

scheme does not provide a reasonable mechanism for protecting

against the class of constitutional violations alleged here.

 We have also considered appellant's other grounds

for appeal and find them without merit.

 Accordingly, the judgment of the district court is

affirmed. 
 

 - 11 -
 -11-