USCA1 Opinion

 

 January 11, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1397 ILEANA BOLIVAR and LEONARDO CANDELARIO, Plaintiffs, Appellants, v. DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Young,* District Judge. ______________ ____________________ Awilda M. Ortiz-Rivera with whom Raul Santiago Melendez was on _______________________ _______________________ brief for appellants. Paul D. Scott, Appellate Staff, Civil Division, Department of ______________ Justice, with whom Frank W. Hunger, Assistant Attorney General, Paul _______________ ____ M. Gagnon, United States Attorney, and Barbara L. Herwig, Appellate _________ _________________ Staff, Civil Division, Department of Justice, were on brief for appellees. ____________________ ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. Per Curiam. Ileana Bolivar and Leonardo Candelario were __________ employees of the Federal Bureau of Investigation in its San Juan office in Puerto Rico. Bolivar worked as an administrative officer and Candelario as a photographer. The incident that triggered this litigation occurred in February 1993, when Candelario wrote and placed an anonymous letter in a "suggestion box" in which Candelario expressed his view that since his superiors, Robert Opfer and Hector Pesquera, had taken charge of the office morale had dropped. Opfer was the special agent in charge of the office, and Pesquera was the assistant special agent in charge. On February 19, 1993, Opfer and Pesquera questioned Candelario about the anonymous letter. In his subsequent complaint Candelario states that Opfer and Pesquera "submitted [him] to an ordeal of intense interrogation which lasted almost four and a half hours" to obtain information about Bolivar's involvement in the letter. Candelario says that he was eventually forced to sign a sworn statement indicating that he had authored the letter but had told Bolivar about it. Candelario says that he thereupon became ill and was later found to have suffered a heart attack. According to their later complaint, both Bolivar and Candelario were then subject to adverse personnel actions in retaliation for Candelario's letter. Candelario said that he was passed over for a promotion that was otherwise due. -2- -2- Bolivar said that she was demoted, and that a grievance was filed against her (apparently for refusing to cooperate in the investigation). Bolivar also said that she had been slandered and suffered damage to her dignity, apparently a reference to the demotion or grievance procedure. On August 3, 1993, Bolivar and Candelario filed the present suit in federal district court against their two superiors and the director of the FBI. About two weeks later, a similar suit was started in the local Puerto Rico court and subsequently removed and consolidated; but on appeal neither Candelario nor Bolivar place any emphasis on the later suit. As ultimately amended, the federal complaint claimed that the conduct alleged violated the First Amendment and gave rise to a cause of action under Bivens v. Six ______ ___ Unknown Named Agents, 403 U.S. 388 (1971). The suit asked _____________________ for just under $5 million in compensatory damages and an injunction. On February 14, 1994, the district court dismissed the case. One ground, which we need not discuss at length, involved the supposed lack of proper service of the summons and complaint. The other ground was that the complaint failed to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). Since the latter ground involves no factual issue and permits a final disposition of the case, we -3- -3- address only the latter ground and affirm based on well- settled authority. There is no explicit cause of action in the Constitution for a violation of First Amendment rights by federal officers. The Supreme Court inferred such a remedy in Bivens ______ as a judicial construct. Then, in Bush v. Lucas, 462 U.S. ____ _____ 367 (1983), the Supreme Court ruled that no such First Amendment remedy would be inferred where the underlying conduct centered around adverse federal personnel actions, because Congress had created an elaborate and comprehensive set of procedures and remedies to govern such cases. See id. ___ ___ at 385-88. Bush, like this case, involved alleged ____ retaliation by a superior for a subordinate's exercise of what were assumed to be legitimate First Amendment rights. In Bush the Court agreed that Congress' remedies might ____ not be as effective as the Bivens remedy or cover every sort ______ of injury, 462 U.S. at 372; but the Court said that the need for that remedy was lessened by the presence of the statute and the possibility of interfering with the federal scheme argued against the Bivens remedy. Id. at 388-89. This ______ ___ court, like other circuits, has followed Bush and refused to ____ entertain similar claims in subsequent cases. Berrios v. _______ Department of the Army, 884 F.2d 28 (1st Cir. 1989); Roth v. ______________________ ____ United States, 952 F.2d 611 (1st Cir. 1991). _____________ -4- -4- Although reliance on Bush to preempt a state cause of ____ action for defamation might seem more debatable, this court did so hold in Berrios--with respect to correspondence _______ incident to federal removal proceedings--on the ground that the defamation claims were essentially attempts "to challenge collaterally an adverse personnel action." Id. at 32. ___ Accord, Roth, 952 F.2d at 614. Bolivar makes no attempt to ______ ____ distinguish her own defamation claims as any less connected to the complained of personnel actions. Interestingly, Bush ____ itself involved defamation claims of the same kind, 462 U.S. at 371, and this apparently made no difference to the Supreme Court. Thus, the present case is so similar to Bush and our own ____ subsequent decisions that there is no reason for any extended discussion. The only substantial effort made by appellants to distinguish Bush is to emphasize the allegedly ____ inquisitorial interview of Candelario and to point to a footnote in Bush stating: "In addition, certain actions by ____ supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as `personnel actions' within the statutory scheme." 462 U.S. at 385 n.28. We need not consider Bolivar's lack of standing since this shift of emphasis is unavailing even as to Candelario. -5- -5- Certainly some activities of federal officers, although taken in an employment context in reprisal for employee criticism, are independently unlawful apart from Bivens or ______ even criminal. This seems to be the concern of the Bush ____ footnote invoked by the appellants. If a superior physically assaulted a subordinate in response to adverse comments about the superior's management, it might seem a leap to argue that the civil service statutes impliedly eliminate the common law claim for damages for battery. But cf. Green v. Hill, 954 _______ _____ ____ F.2d 694, 697 (11th Cir. 1992) (holding that other federal remedies preempt such a claim). In any event, despite some conclusory rhetoric in the appellants' brief, the complaint did not allege that the interrogation was in any respect unlawful except so far as it ______ constituted reprisal for the violation of First Amendment rights. As a matter of fact, apart from the length of the interview--and the government says that Candelario elsewhere said that it lasted two hours rather than four--nothing specific is said in the complaint or the appeals brief to ________ explain why it is now described as Gestapo-like behavior. The complaint in this case is not even arguably within the spirit of the Bush footnote. ____ If FBI officials did seek to punish legitimate criticism through personnel actions, this would be a matter of concern; but it would also be a concern for which the civil service -6- -6- statutes appear to provide ample remedies. Similarly, the Federal Employees' Compensation Act may well provide a remedy if Candelario did suffer a "personal injury sustained while in the performance of his duty," 5 U.S.C. 8102. Obviously a Bivens action could provide more generous damages, whether ______ for denial of promotion or for medical injury, but Bush ____ expressly held that this makes no difference to the analysis or the result. 462 U.S. at 372. See also Schweiker v. ________ _________ Chilicky, 487 U.S. 412, 423 (1988).  ________ Affirmed.  ________ -7- -7-