**Doris A. METIVIER, Plaintiff.**

v.

**TOWN OF GRAFTON, Russell J. Connor, Jr., Brook A. Padgett, Roger Demers, Kenneth Grew, Christopher R. LeMay and Michael W. Sowyrda, Defendants.**

No. Civ.A 01–40074–NMG.

United States District Court, D. Massachusetts.

June 20, 2001.

Gary S. Brackett, James T. Masteralexis, Brackett & Lucas, Worcester, MA, for Plaintiff.

Carole Sakowski Lynch, Morrison, Mahoney & Miller, Springfield, MA, Michael D. Badger, Richard C. Van Nostrand, Mirick, O'Connell, DeMallie & Lougee, LLP, Worcester, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff Doris A. Metivier ("Metivier") has filed a complaint against the defendants, the Town of Grafton ("the Town"), Town Administrator Russell J. Connor ("Connor") and the members of the Board of Selectmen. Prior to June 30, 2000, Metivier served as Town Accountant for five consecutive three-year terms. She contends that her rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution were violated when the defendants refused to afford her a hearing showing good cause for Town Administrator Connor's failure to reappoint her as the Town Accountant.

On June 6, 2001, the parties appeared before this Court for a hearing on Metivier's Motion for a Preliminary Injunction, wherein Metivier seeks an order directing the defendants to provide her with a hearing prior to her removal and the appointment of a successor Town Accountant. Metivier contends that the defendants must establish, at that hearing, good cause for failing to reappoint her to that position. At the June 6, 2001 motion hearing, this Court also heard argument on the defendants' Motion to Dismiss.

### I. Background

Metivier originally filed a complaint in Worcester Superior Court alleging that the defendants violated her rights under the Fourteenth Amendment of the United States Constitution and Mass.Gen.Laws c. 12, § 11 H–I. The defendants filed a notice of removal on the basis of federal question jurisdiction.

Metivier has been employed by the Town of Grafton ("the Town") for twenty-eight (28) years and has served as the Town Accountant for the past fifteen (15) years. On June 30, 2000, at the expiration

of her fifth three-year term as Town Accountant, Town Administrator Connor did not renew Metivier's appointment. At a meeting of the Board of Selectmen shortly thereafter, Connor informed the Board that he had requested Metivier to remain as the Town Accountant until her "successor is qualified" but offered no reason for failing to renew her appointment.

Metivier alleges that since July 1, 2000, Connor has repeatedly and incorrectly claimed that her work performance as Town Accountant was deficient. Metivier also claims that Connor has "threatened, intimidated and coerced her" to resign instead of affording her a hearing. On February 2, 2001, Metivier submitted a letter to the Town stating her intent to retire on June 30, 2001. She contends that she does not wish to retire but only so indicated in an effort to stop the "threatening, intimidating and coercive" conduct of Connor.

In an Affidavit submitted by the defendants, Town Administrator Connor states that he has been Town Administrator since August, 1999. He maintains that he chose not to reappoint Metivier due to his dissatisfaction with her work performance. According to Connor, Metivier, among other things, (1) refused to establish uniform internal procedures for processing and recording of all financial activity, (2) consistently failed to verify cash balances adequately, (3) failed to work constructively with other Town departments and agencies, (4) objected to being asked to assist him in preparing the annual Town budget, (5) delayed preparation of necessary reports and forecasts and (6) failed to obtain necessary education and certifications required for her position.

The defendants contend that Metivier attended the July 11, 2000 meeting of the Board of Selectmen to complain about the decision not to reappoint her, and that the following day she submitted a doctor's note indicating that she suffered from work-related stress and would be unable to return to work for several weeks. At oral argument, the defendants made the uncontested assertion that Metivier remained absent under those circumstances for approximately five months. The forms Metivier submitted in support of her absence under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), were allegedly incomplete and were thus disapproved because she failed to identify either a prognosis or treatment plan for her condition. The Town denied her claim for worker's compensation benefits during that same time period.

Because the Town fiscal year ends on June 30, Metivier's absence occurred during an allegedly critical time in its financial activities and the Town was forced to hire a temporary accountant to assist with payment obligations in her absence. Upon her return in November, 2000, Metivier and Connor worked out a part-time schedule whereby Metivier would be paid only for the time actually worked. Despite that arrangement, Metivier later allegedly approved her own payroll to include paid sick leave for the unworked portions of her part-time schedule. By letter dated January 10, 2001, Connor informed Metivier that her status as a "holdover" employee would continue until the appointment of her successor, which he estimated would occur sometime in March, 2001.

Metivier argues that the Grafton Town Charter ("the Town Charter") and M.G.L. c. 41, § 55 entitle her to a hearing in which the defendants must establish good cause for their failure to reappoint her to the position of Town Accountant. The defendants maintain that Metivier is not entitled to any such hearing because she was neither suspended nor removed from her position, but instead, was simply not reappointed when her term expired. The

defendants contend that the failure to reappoint does not entitle Metivier to a hearing or to the requirement that they establish good cause for the decision.

## II. Discussion

### A. Law Applicable to Pending Motions

#### 1. Motion for a Preliminary Injunction

■ In ruling on a motion for a preliminary injunction, this Court must consider whether the plaintiff has established that (1) she has a substantial likelihood of success on the merits, (2) there exists, absent injunctive relief, a significant risk to her of irreparable harm, (3) the balance of hardship tilts in her favor, and (4) granting the injunction will not negatively affect the public interest. *TEC Engineering Corp. v. Budget Molders Supply Inc.*, 82 F.3d 542, 544 (1st Cir.1996). Though a district court enjoys considerable discretion in applying this test, its decision to grant or deny a preliminary injunction must be supported by adequate findings of fact and conclusions of law. *Id.;* Fed.R.Civ.P. 52(a).

#### 2. Motion to Dismiss

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To prevail against a motion to dismiss, the plaintiff must demonstrate that she has "set forth in [the] complaint factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory." *Roth v. United States*, 952 F.2d 611, 613 (1st Cir.1991) (internal quotation marks and citations omitted). In considering such a motion, the court must take facts alleged in the complaint as true, and "draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." *Roth*, 952 F.2d at 613.

The due process violations asserted by Metivier are based on the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, §§ 11H and I, which provide, in relevant part, a cause of action against any "person", whether or not acting under color of law, who interferes or attempts to interfere by "threats, intimidation or coercion" with the exercise or enjoyment by any other person of rights secured by the constitution or laws of the United States or the Commonwealth of Massachusetts.

■ Metivier is not authorized to assert a claim under § 11H (as opposed to § 11I) because the attorney general of the Commonwealth of Massachusetts is the sole entity entitled to bring a civil action under that section. *See Doyle v. Dukakis*, 634 F.Supp. 1441, 1448 (D.Mass.1986). Moreover, the Appeals Court of Massachusetts has recently held that a municipality is not a "person" covered the MCRA. *See Howcroft v. City of Peabody*, 51 Mass.App. Ct. 573, 747 N.E.2d 729 (Mass.App.Ct. 2001). Therefore, at the outset, the defendants' motion to dismiss with respect to Metivier's entire claim under M.G.L. c. 12, § 11H will be allowed and the Town of Grafton will be dismissed as a defendant in this case.

### B. Proper Characterization of Metivier's Employment Status

#### 1. Applicable Law

Chapter 41, Section 55 of Massachusetts General Laws states:

> The town accountant shall ... hold office for three years and until a successor

is qualified; provided, however, that at the discretion of the appointing authority, a person may be appointed to the position of town accountant for a term of not more than five years and until a successor is qualified.

The Grafton Town Charter, Article 7, *General Provisions,* Section 7–8, *Removal and Suspensions,* states in relevant part:

Any appointed officer, member of a multiple member body or employee of the town, not subject to the provisions of state civil service law, or covered by the terms of a collective bargaining agreement which provides a different method, and whether appointed for a fixed or an indefinite term, may be suspended or removed from office by the appointing authority for good cause. . . .

The appointing authority when removing any such officer, member of a multiple member body or employee of the town shall act in accordance with following procedure:

(a) A written notice of the intent to remove and a statement of the cause or causes therefore shall be delivered by registered mail to the last known address of the person sought to be removed.

(b) Within five (5) days of delivery of such notice the officer, member of the multiple member body or employee of the town may request a public hearing at which such person may be represented by counsel, shall be entitled to present evidence, call witnesses and to question any witness appearing at the hearing.

(c) Between one (1) and ten (10) days after the public hearing is adjourned, or if the officer, member of a multiple member body or employee of the town fails to request a public hearing between six (6) and fifteen (15) days after delivery of the notice of intent to remove, the appointing authority shall take final action, either removing the officer, member of a multiple member body or employee of the town or notifying such person that the notice is rescinded. Failure of the appointing authority to take any action within the time periods as stated in this section shall be deemed to be a recision of the original notice and the officer, member of a multiple member body or employee shall, forthwith, be reinstated.

Nothing in this section shall be construed as granting a right to such a hearing when a person who has been appointed for a fixed term is not reappointed when the original term expires.

The Grafton Town Charter at 35–36.

Article 8, *Transitional Provisions,* Section 8–2, *Continuation of Government,* provides that

All town agencies shall continue to perform their duties until reappointed, reelected, or until successors to their respective positions are duly appointed or elected, or their duties have been transferred and assumed by another town agency in accordance with the provisions of this charter.

The Grafton Town Charter at 37.

### 2. Analysis

### a. Proper Characterization of Metivier's Post–June 30, 2000 Employment

Metivier asserts that a fair reading of M.G.L. c. 41, § 55 and the Town Charter indicates that her "fixed" appointment to the position of Town Accountant does not end until her term ends *and her successor is chosen.* She emphasizes the word "and" in the first clause of c. 41, § 55 ("[t]he town accountant shall . . . hold office for three years and until a successor is quali-

fied") and points out that under Section 8–2 of the Town Charter, "[a]ll town agencies shall continue to perform their duties until reappointed, reelected or until successors to their respective positions are duly appointed or elected". Her contention that those provisions collectively somehow exempt her from the constraints of holding a fixed term appointment is unpersuasive and fails to cohere with other provisions of the Town Charter.

The Town Charter indicates that the Town Administrator shall appoint a Town Accountant "to serve for a term of three years". The Grafton Town Charter, Article 8, *Transitional Provisions,* Section 8–5(f)(3), *Time of Taking Effect,* at 40. That provision is consistent with M.G.L. c. 41, § 55, *supra,* which permits the appointment of such accountants for terms of between three and five years plus whatever additional time is necessary to qualify a new Town Accountant. Neither the statute nor the Town Charter *requires* the addition of that qualification period to the end of any appointment term.

Furthermore, the last sentence of Section 7–8 of the Town Charter clearly indicates that a person who has been appointed to a fixed term does not have a right to a hearing when that person is not reappointed.[1] The two statutory provisions read together define Metivier's position as Town Accountant for a fixed term of three years.

■ The parties agree that Metivier would have been entitled to a hearing and the establishment of cause under Section 7–8 if she had been suspended or removed during her three-year term, however, Metivier suggests that she continues to possess those rights until her successor is appointed. If her contention is correct and she retains those rights during her fixed term *and* until the moment of her successor's appointment, whenever that may be, the designation of her three-year term by the statute and the Town Charter is rendered meaningless. Metivier's construction is inconsistent with the apparent intent of the Legislature to create a fixed term position (during which the incumbent can be removed only for cause) with an obligation on the part of that incumbent to remain on the job until a successor is appointed. That illogical construction will, therefore, be rejected. *See Lamore v. Ives,* 977 F.2d 713, 716–717 (1st Cir.1992) ("[a]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous").

■ This Court construes the statute and Town Charter as providing for a fixed term of three years after which the incumbent becomes a "holdover" employee who is *required* to continue to perform her duties until her successor is qualified. *See* Town Charter, Section 8–2 ("[a]ll town agencies **shall** continue to perform their duties ... until successors ... are duly appointed") (emphasis added). That Sec-

---

1. Metivier also contends that the word "original" in the last sentence of Section 7–8 should be understood to mean "first". She maintains that because she has completed five consecutive three-year terms, the appointment that expired on June 30, 2000 was obviously not her "original" appointment and therefore she is entitled to a hearing by virtue of the other provisions of Section 7–8. Although the use of the word "original" is arguably ambig-

uous it is best understood in context to refer to the "underlying" term in contrast to any "holdover" term a person may serve after the expiration of the fixed term and pending the qualification of a successor. To adopt the construction proposed by Metivier would require reading an affirmative right to a hearing into a provision stating a negative. This Court will do no such thing.

tion and the phrase "and until a successor is qualified" in M.G.L. c. 41, § 55 do not add a mandatory, limitless extension of her "fixed" term for purposes of Section 7–8 but rather describe a condition of her employment. The statute and the Town Charter do not create or expand her rights but instead impose an obligation. The Town Accountant working for the Town of Grafton must continue to perform her job, even if not reappointed to another fixed term, until her successor is designated in order to ensure continuity of the municipal government and to maintain the proper administration of the Town.

In the alternative, Metivier argues that since July 1, 2000, at the expiration of her "fixed" term of three years, she has been an "appointed" employee for an "indefinite term" pending the qualification of her successor. Therefore, according to Metivier, the defendants' failure to reappoint her affords her a right to the hearing outlined in Section 7–8 of the Town Charter. That construction also defies logic and common sense.

The Town Charter indicates that the positions of Fire Chief and Police Chief, among others, are appointed by the Town Administrator "to serve for indefinite terms". The Grafton Town Charter, Article 8, *Transitional Provisions,* Section 8–5(f)(3), *Time of Taking Effect,* at 40. The parties agree that those positions would be entitled to hearings under Section 7–8 if their occupants were removed or suspended at any time after their appointments.

A Fire Chief's term is indefinite because there is no indication at the time of appointment of when or why that term will end. In the absence of good cause for removal, the Fire Chief will continue to

serve indefinitely. Metivier's service since July 1, 2000 is simply not "indefinite" in the same way. From the commencement of her holdover "term", all parties understood that her employment would end as soon as her successor was qualified. Her job performance or reluctance to quit is irrelevant to the determination of the length of her "term". The fact that her successor has not as yet been appointed is due, in large part, to the pendency of this lawsuit and the defendants' concern about her legal right to a hearing.

■ This Court finds that since July 1, 2000, Metivier has been neither a "fixed term" nor an "indefinite term" employee but instead a "holdover" employee performing her duties as required under Section 8–2 of the Town Charter. As such, she has no right to a hearing under Section 7–8 of the Town Charter at which she could contest the fact that she was not reappointed.[2]

### b. Existence of a Claim under the MCRA

■ To establish a claim under the MCRA, the plaintiff must prove that

(1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2)[has] been interfered with, or attempted to be interfered with and (3) that the interference or attempted interference was by "threats, intimidation or coercion."

*Swanset Dev. Corp. v. Taunton,* 423 Mass. 390, 395, 668 N.E.2d 333 (1996). Because this Court holds that since July 1, 2000, Metivier has been a holdover employee without any right to a hearing under Sec-

---

**2.** This Court also holds that the by-law found in Article 21, *Personnel Board,* Section 4–15, *Separation of Employment,* Subsection (b) *Discharge* does not afford Metivier a hearing because she was not "discharged" from employment as that subsection defines the word. She was, instead, denied reappointment at the expiration of her fixed term.

tion 7–8 of the Town Charter, Metivier has failed to state a claim upon which relief can be granted and thus her complaint will be dismissed. *See Willitts v. Roman Catholic Archbishop of Boston,* 411 Mass. 202, 210, 581 N.E.2d 475 (1991) (refusal of defendant parochial school to renew contract with plaintiff teacher hired for definite term was within its discretion, did not "improperly interfere" with a secured right belonging to the plaintiff and thus as a matter of law did not constitute "threats, intimidation or coercion" under MCRA).

Although this Court need not address the potential violation of 42 U.S.C. § 1983 because the complaint does not allege one, it will nevertheless address the substance of certain claims Metivier makes with respect to property and liberty rights that the defendants allegedly violated by their refusal to afford her a hearing. Those claims are evaluated "in the manner most congenial to the plaintiff's theory" as are all claims in the context of a motion to dismiss. *Roth,* 952 F.2d at 613.

## C. Due Process Violations Under the Fourteenth Amendment

### 1. Applicable Law

To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty or property, and that state action has deprived him or her of that interest. *See* U.S. Const. amend. XIV, § 1. The United States Supreme Court has established that

> [w]e examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.

*Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citation omitted).

### a. Existence of a Property Interest

■ Metivier contends that under a fair reading of the Town Charter and M.G.L. c. 41, § 55, she possesses a property interest in her job that can only be rescinded after a showing of good cause. Fourteenth Amendment property interests are not, however, created by the Constitution. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Instead, they stem from "an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits". *Id.*

In *Roth,* an assistant professor hired for a fixed term by Wisconsin State University claimed that the decision not to rehire him infringed his Fourteenth Amendment rights because, *inter alia,* he was given no reason for the decision and no opportunity to challenge it at any sort of hearing. *Id.* at 568–569, 92 S.Ct. 2701. The Court found that the terms and conditions of the professor's employment made "no provision for renewal whatsoever" and that no state statute or University rule or policy secured his interest in re-employment or created any legitimate claim to it. *Id.* at 578, 92 S.Ct. 2701. The Supreme Court held that although the professor had an

> abstract concern in being rehired … he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

*Id.*

■ In the case at bar, the only provision cited by the parties that relates to re-

employment or reappointment states that *no* right to a hearing under Section 7–8 exists when a fixed term employee is not reappointed. *See* The Grafton Town Charter, Section 7–8, at 36. No provision of the Town Charter or of Massachusetts state law secures Metivier's interest in reappointment or creates any legitimate claim to it. *See Roth,* 408 U.S. at 578, 92 S.Ct. 2701. Under these circumstances, Metivier surely had an "abstract concern" in being reappointed but she did not have a property interest sufficient to require the Town authorities to give her a hearing when the Town Administrator declined to reappoint her to the position of Town Accountant. *Id.*

### b. Existence of a Liberty Interest

In her Opposition to the Defendants' Motion to Dismiss, Metivier raises, for the first time, the argument that she is entitled to a hearing because the actions of the defendants have deprived her of a liberty interest protected by the Fourteenth Amendment.

■ In order to determine whether a liberty interest protected under the Fourteenth Amendment is implicated, the Court of Appeals for the First Circuit has adopted the "stigma-plus" test:

> To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized, but also stigmatized in connection with a denial of a right or status previously recognized under state law.

*Perez,* 596 F.2d at 489, *citing Dennis v. S. & S. Cons.Rural High School District,* 577 F.2d 338, 341 (5th Cir.1978). While defamation or damage to one's reputation by a governmental official, standing alone, does not work a deprivation of liberty protected by the Fourteenth Amendment, governmental action altering a right or status previously held under state law "combined with the injury resulting from the defamation, justifie[s] the invocation of procedural safeguards." *Rodriguez de Quinonez v. Perez,* 596 F.2d 486, 489 (1979), *cert. denied* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979), *citing Paul v. Davis,* 424 U.S. 693, 708–709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

■ A decision not to reemploy, standing alone, does not deprive an employee of liberty under the Fourteenth Amendment. *See Roth,* 408 U.S. at 575, 92 S.Ct. 2701. In *Roth,* the Supreme Court held that the liberty interests of the associate professor were not implicated because, in declining to rehire him, the State did *not* (1) make any charge against him that might "seriously damage his standing and associations in his community" or (2) "base the nonrenewal of his contract on a charge ... that he had been guilty of dishonesty, or immorality". *Roth,* 408 U.S. at 573, 92 S.Ct. 2701. Moreover, in that case, there was no suggestion that the State, in declining to reemploy the associate professor, imposed on him "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities". *Id.* The Supreme Court noted that proof that a record of nonretention in one job might make a person somewhat less attractive to some other employers was insufficient to establish the kind of foreclosure of opportunities amounting to a deprivation of liberty. *Id.* at 574, n. 13, 92 S.Ct. 2701.

■ The case at bar is analogous to *Roth.* Metivier contends that she has been forced to endure the "stigma" of being terminated from and not reappointed to the job of Town Accountant. However, as *Roth* teaches, the mere failure to reemploy does not constitute a "stigma" cognizable as a liberty interest. Moreover, the "air of mystery" that allegedly surrounds her

non-reappointment does not constitute defamation sufficient to implicate the Fourteenth Amendment. There is no allegation that Town Administrator Connor made a public statement regarding Metivier's fitness for the position, nor does Metivier assert that she has been accused of dishonesty or immorality. *See Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam) ("Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is ... a hearing [to enable the employee to clear his name] required."). Moreover, the complete discretion of the Town Administrator in appointing and reappointing the Town Accountant severely undercuts any argument that Metivier's non-reappointment and the Town's refusal to provide reasons lead to a negative inference by the public regarding her "good name, reputation, honor or integrity".

Metivier argues that the "plus" requirement has been satisfied by the conduct of the defendants in "suddenly, without notice, nor an explanation" removing her from that position and refusing to discuss her non-reappointment in public. That conduct reflects the permissible exercise of the defendants' discretion and does not constitute the requisite "plus" factor under the test.

Although Metivier does not argue that her inability to obtain elsewhere the pension that would be available to her if she had been reappointed constitutes the requisite "plus", this Court concludes that such a "limitation" on her future employment is insufficient to satisfy the "stigma-plus" test. The test of whether a state employer's decision not to rehire an employee denies that employee due process is met when it deprives her of the "freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573, 92 S.Ct. 2701.

Cases wherein a cognizable loss of employment opportunities was found have involved a much greater level of employment foreclosure than that presented in this case. *See e.g. Valmonte v. Bane*, 18 F.3d 992 (2d Cir.1994) (plaintiff's inclusion on New York State Central Registrar of Child Abuse and Maltreatment found to prevent her from applying for employment in entire field of child care because any such application would trigger disclosure of information on list and potential employers would either choose not to hire her or, if they did wish to hire her, be required by law to explain reasons why in writing); *Brandt v. Board of Cooperative Educational Services*, 820 F.2d 41, 45 (2d Cir. 1987) (dismissal of public school teacher for alleged sexual misconduct, where charges were placed in teacher's personnel file, might entitle him to hearing if teacher could show prospective employers were likely to gain access to his personnel file and decide not to hire him); *Dennis v. S & S Consolidated Rural High School District*, 577 F.2d 338 (5th Cir.1978) (liberty interest of non-tenured high school teacher was implicated when members of school board, in explaining why his teaching contract had not been renewed, publicly charged that he had a drinking problem). Therefore, Metivier has failed to establish a liberty interest cognizable under the Fourteenth Amendment which would afford her a right to a hearing upon its deprivation.

**D. The Grievance Procedure**

Finally, Metivier contends that she is entitled to a hearing under the Grievance Procedure of the Town as that procedure is described in Article 21, *Personnel Board*, Section 4–16, *Grievance Procedure*. She maintains that she has complied with the reporting requirement of that section

because on July 20, 2000, she wrote a letter to Town Administrator Connor "grieving" his failure to reappoint her. In that letter she alleges that she was notified of his decision of non-reappointment on July 11, 2000 at the Board of Selectmen meeting.[3]

Section 4–16, *Grievance Procedure*, states:

> The purpose of the Grievance Procedure is to ensure fair and equitable treatment for all employees, eliminate dissatisfaction, and resolve problems so that constructive work-producing relationships can be maintained for the benefit of all.

The procedure provides, *inter alia*, that an employee "will be allowed (10) working days to refer [her] problem in writing" to the department head. If dissatisfied with the department head's written answer, the employee may appeal to the Town Administrator. If still dissatisfied, she may appeal to the Board of Selectmen, which then holds a meeting with the employee and the department head and subsequently renders its **"final** decision in writing". Article 21, *Personnel Board*, Section 4–16, *Grievance Procedure*, of the Town of Grafton (emphasis added).

 The Grievance Procedure is separate and apart from the rights to a hearing afforded under Section 7–8 of the Town Charter and Section 4–15 of Article 21. This Court concludes, however, that Metivier's dissatisfaction with her failure to be reappointed is not a "problem" that is "grievable" under Section 4–16.

This Court has previously found that as of July 1, 2000, Metivier was not an employee either for a "fixed" or "indefinite" term but instead merely serving in a "holdover" capacity pending the appointment of her successor. At the motion hearing, Metivier did not contest the defendants' statement that, although the Town Administrator must answer to the Board of Selectmen with respect to the performance of his duties, including those of appointment, the appointment and retention of a Town Accountant is wholly within his discretion. The Grievance Procedure is not implicated by the failure of the Town Administrator to reappoint the holder of a fixed-term position because there are no legal means by which that Administrator could be forced to reconsider his decision. Because it would be impossible for the Board of Selectmen to render a "final" decision in writing that would differ in any way from the decision of the Town Administrator, Metivier does not present a problem that is "grievable" under that section.

### III. Conclusion

Because the complaint does not state a claim upon which relief can be granted, Metivier has failed, as a matter of law, to show a "substantial likelihood of success" on the merits of her claims in order to justify the imposition of a preliminary injunction. This Court declines to consider the other elements necessary to justify such relief.

### ORDER

For the reasons stated above, Metivier's Motion for a Preliminary Injunction (Docket No. 2) is **DENIED**. The defendants' Motion to Dismiss (Docket No. 5) is **ALLOWED** and the complaint is hereby dismissed with prejudice.

**So ordered.**

---

3. For purposes of the pending motions, this Court assumes the truthfulness and accuracy of those assertions and the letters submitted at the hearing, despite the fact that Metivier has submitted no affidavit to that effect.