989 F.2d 484
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
John F. DESMOND, Plaintiff, Appellant,
v.
DEPARTMENT OF DEFENSE, Defendant, Appellee.
 No. 92-2201.
 United States Court of Appeals,
First Circuit.
 March 19, 1993.
 
 Appeal from the United States District Court for the District of Massachusetts
 John F. Desmond on brief pro se.
 A. John Pappalardo, United States Attorney, William L. Parker, Special Assistant United States Attorney, and Scot Gulick, Assistant General Counsel, Defense Mapping Agency, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Selya, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 The question before us is whether the district court correctly granted summary judgment in favor of defendant on various claims involving the termination of plaintiff's employment by the Defense Mapping Agency ["DMA"]. As we find that the Civil Service Reform Act provides the exclusive procedure and remedies governing these claims, we affirm the district court's disposition of the case.
 
 
 2
 Our review of a district court's grant of summary judgment is plenary. See Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990). Summary judgment is appropriate where the record reflects "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A perusal of the entire record, including the numerous exhibits appended to the plaintiff's complaint, the parties' affidavits, and motion papers, reveals the following sequence of events.
 
 
 3
 Appellant was employed by DMA as a Marine Information Specialist. His appointment was effective September 11, 1989, subject to a one year probationary period. On December 29, 1989, DMA terminated the employment because, according to DMA, appellant refused to accept a security clearance. A security clearance, DMA maintains, is a requirement of the position.
 
 
 4
 Appellant appealed his removal to the Merit Systems Protection Board ["MSPB"] on the ground that the manner in which his employment had been terminated, without notice and an opportunity to answer, violated agency regulations. See 5 C.F.R. § 315.805 (requiring such procedures where an employee is dismissed for a reason arising out of pre-employment events).
 
 
 5
 Appellant acknowledged that after he was hired he refused to sign the document necessary to accept a security clearance. He also admitted sending a letter to the Director of the DMA in December, 1989, stating, "I do not wish a security clearance now or at any further date." However, he argued that this refusal was the product of a pre-appointment condition, to wit, a lack of knowledge on his part that a security clearance was required, attributable to the DMA's representations to that effect when he was offered the job.
 
 
 6
 Appellant did not deny signing a "Statement of Understanding," the day his employment began, acknowledging the security clearance requirement. But he implied that the manner in which the DMA presented the "Statement of Understanding" to him, amid many other personnel documents, caused him to overlook its contents. Finally, in an affidavit directed to the MSPB, appellant stated, "If I had been informed that the security clearance was mandatory I would have accepted the clearance."
 
 
 7
 The MSPB determined that appellant's employment had been terminated for a "post-appointment" reason. Since, with few exceptions, the MSPB has no jurisdiction over such probationary period terminations, it dismissed the appeal. See 5 C.F.R. § 315.806(b)-(d). The MSPB also declined, in light of this lack of jurisdiction, to consider appellant's argument that his First Amendment rights had been violated because his termination followed on the heels of his letter complaining about the security clearance requirement. MSPB No. DC 315H9010170 (Feb. 20, 1990). The MSPB's decision was affirmed on appeal to the circuit court, and the Supreme Court denied certiorari, and a rehearing. Desmond v. Department of Defense, 915 F.2d 1584 (Fed. Cir. 1990), cert. denied, 111 S. Ct. 792 (1991), reh'g denied, 111 S. Ct. 1030 (1991).
 
 
 8
 Appellant then filed this lawsuit in the district court. In a complaint, and then an amended complaint, both filed pro se, appellant changed his factual theories. Appellant's first complaint alleged that the DMA originally hired him for a non-sensitive position. In December, 1989, however, he discovered that he was the object of covert surveillance because, he alleged, the DMA was considering him for a "collateral job assignment" requiring a security clearance. In contrast to the affidavit he filed with MSPB ("if I had been informed ... I would have accepted the clearance"), appellant's district court complaint asserted that "he did not wish any type of security clearance" because of a prior experience in the Navy when, he said, he had been exposed to nerve gas and held incommunicado against his wishes. He attributed the DMA's subsequent termination of his employment solely to retaliation for his December, 1989 letter objecting to the security clearance.[1]
 
 
 9
 In his amended complaint appellant again changed his factual theory.[2] This time, despite his earlier characterization of the December, 1989 letter as a product of misunderstanding, his amended complaint echoed the letter's contents. It alleged that the DMA had hired appellant for the very purpose of conducting a "witch hunt" against him, "under the disguise of a security clearance investigation." This "witch hunt," appellant said, was a response to complaints he had made to Congress about his treatment in the Navy, where, he reiterated, he had been exposed to a chemical-biological nerve agent and "held political prisoner to cover-up that fact." Moreover, appellant's amended complaint now seemingly denied the genuineness of his signature on the "Statement of Understanding," alleging it was "obviously" an altered or forged document.
 
 
 10
 Without characterizing apellant's claims precisely, it appears he is now seeking to assert tort and contract claims, including claims for violations of his first amendment, privacy and due process rights. See generally Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Appellant demands reinstatement, back pay plus interest, a full evidentiary hearing on the merits of his termination, and $100,000 in compensatory and punitive damages.
 
 
 11
 Appellee challenged the legal sufficiency of appellant's claims on numerous grounds, including preemption, res judicata and collateral estoppel, sovereign immunity, failure to file a proper claim under the Federal Tort Claims Act, and the absence of an enforceable employment contract. We do not need to reach most of these issues, however, because no matter how appellant's claims are styled, they are precluded by the exclusivity of the remedies and procedures provided in the Civil Service Reform Act of 1978 ["CSRA"] and the Whistleblower's Protection Act of 1989.
 
 
 12
 "The CSRA was meant to provide a comprehensive framework for personnel policies governing federal employees." Roth v. United States, 952 F.2d 611, 614 (1st Cir. 1991); see also Bush v. Lucas, 462 U.S. 367 (1983).
 
 
 13
 The legislative history of the CSRA establishes beyond dispute that Congress intended that statute to provide an exclusive procedure for challenging federal personnel decisions.... The history and intent of the CSRA plainly prefigures that collateral district court jurisdiction would impede the ideals of fast, efficient management and greater uniformity in the judicial review process.
 
 
 14
 Roth, 952 F.2d at 615 (quoting Berrios v. Department of the Army, 884 F.2d 28, 31-32 (1st Cir. 1989)). See also Schweiker v. Chilicky, 487 U.S. 412, 427-28 (1988).
 
 
 15
 Exclusivity of the remedial scheme provided by the CSRA is necessary to effectuate the statutory design, "balanc[ing] the legitimate interests of the various categories of federal employees with the needs of sound and efficient regulation." United States v. Fausto, 484 U.S. 439 (1988). To avoid "inconcinnous judicial incursions" into this carefully constructed regulatory structure, CSRA has been held to preclude a wide variety of Bivens-type actions and other federal law claims. Montplaisir v. Leighton, 875 F.2d 1, 3 (1st Cir. 1989) (citing cases); see also Rollins v. Marsh, 937 F.2d 134 (5th Cir. 1991) (Bivens claims alleging violations of First, Fourth, Fifth, Sixth and Fourteenth Amendments and Privacy Act violations); Jones v. Tennessee Valley Authority, 948 F.2d 258 (6th Cir. 1991) (Bivens action alleging retaliation for whistleblowing and civil rights action under 42 U.S.C. § 1985(1)); Kotarski v. Cooper, 866 F.2d 311 (9th Cir. 1989) (Bivens claims brought by probationary employee alleging violations of privacy and free speech rights). In addition, CSRA has been held to preempt a variety of state common law claims. Roth, 952 F.2d at 611 (Bivens and state law tort claims alleging retaliation for refusal to cooperate in improper conduct, citing cases); Saul v. United States, 928 F.2d 829 (9th Cir. 1991) (Bivens claims, labor, and state common law claims).
 
 
 16
 Although CSRA does not provide probationary employees with the same remedies and protections accorded fully tenured employees, the difference is due to Congress' deliberate choice in balancing the employee's need for constitutional protection against the public's interest in an efficient and disciplined federal workforce. See Kotarski, 866 F.2d at 311; Saul, 928 F.2d at 837, 840-41. Management concerns necessarily require great flexibility in determining to whom to grant permanent status. Kotarski, 866 F.2d at 312. Probationary employees are accorded certain procedural protections, however, where termination is for pre-employment reasons. See 5 C.F.R. §§ 315.805, 315.806(c). A direct appeal to the MSPB is also permitted to challenge actions based on "partisan political affiliation or marital status." 5 C.F.R. § 315.908(b).
 
 
 17
 Congress has recently sought to strengthen the administrative protections accorded probationary employees who speak out against mismanagement and waste through the "Whistleblower's Protection Act" of 1989. With the amendments included in that Act, Congress provided "what it considers adequate remedial mechanisms" for redressing constitutional violations. Kotarski, 866 F.2d at 312. Probationary employees are given the right to seek corrective action for prohibited personnel practices through an independent Office of Special Counsel. The Special Counsel is empowered to receive complaints, investigate, and, where there are reasonable grounds, seek correction of a variety of constitutional violations, including, notably, complaints of abuse of authority. 5 U.S.C. §§ 1211, 1213, 1214(a)(1)(2), 1216, 2302(b)(8). At the termination of the Special Counsel's inquiry, the probationary employee may appeal to the MSPB. And if the Special Counsel fails to terminate his inquiry within 120 days after receiving the complaint, the probationary employee may appeal directly to MSPB. 5 U.S.C. §§ 1214(2)(B)(3), 1214(3).
 
 
 18
 Appellant points to the jurisdictional dismissal of the claim he filed with the MSPB as demonstrating that, despite this scheme, in practice the CSRA provides no means to redress the constitutional violations alleged in his district court complaints. But, we do not understand the agency's action in this way. First, the MSPB's dismissal was based on facts and theories very different from those alleged here. Second, even if, properly presented, the MSPB would have had no jurisdiction over an appeal based on the instant factual theories, (although appellant had the right to seek relief from the Special Counsel's office).
 
 
 19
 Appellant also denies the Special Counsel's actual authority citing a telegram he sent to the Special Counsel which allegedly was not answered. The meaning and relevance of the allegations in appellant's telegram are far from clear. But even indulging appellant's interpretation, and viewing the telegram as a formal complaint, it does not prove his point. The Act clearly permitted appellant a further administrative avenue for pursuing constitutional complaints, regardless of any inadvertent inaction by the Special Counsel's office.
 
 
 20
 Although Congress has vested discretion in the Office of Special Counsel and the MSPB, we have elsewhere observed that "even where the CSRA provides no guaranteed forum, preemption of ... work-related tort claims is necessary to fulfill congressional intent." Roth, 952 F.2d at 615 (quoting Saul, 928 F.2d at 843). Appellant's showing falls far short of demonstrating that the CSRA's regulatory scheme does not provide a reasonable mechanism for protecting against the class of constitutional violations alleged here.
 
 
 21
 We have also considered appellant's other grounds for appeal and find them without merit.
 
 
 22
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 In addition to the MSPB action, appellant's complaint also alleged that he had filed an action with the EEOC which was dismissed as untimely. Exhibits submitted with appellant's various motion papers also refer to one or more additional actions involving the same facts, brought before the State's unemployment compensation office and the state courts. In a "Reply to Defendant's Answer," appellant also refers to two additional appeals to the MSPB involving denials of employment by other government agencies connected to the instant termination
 
 
 [2]
 The record before us does not indicate a direct ruling on appellant's motion to amend his complaint. Since the district court referred to the amended complaint in its decision dismissing the case, we read its opinion as effectively granting the motion to amend and treating defendant's summary judgment motion as directed to both complaints