Michael FLANAGAN, Norbert Kuksta, Melvin Schabilion, Saul Weinstein and Francis E. White, Plaintiffs,

v.

Janet RENO, Attorney General of the United States, and the Drug Enforcement Administration, Defendants.

No. 97 C 2083.

United States District Court, N.D. Illinois, Eastern Division.

June 2, 1998.

heating and air conditioning equipment. Golden Seal has since abandoned its claim to the

amount in dispute.

David Philip Schippers, James M. Bailey, Schippers & Bailey, Chicago, IL, Beth J. Kushner, Von Briesen, Purtell & Roper, S.C., Milwaukee, WI, for Plaintiffs.

Thomas P. Walsh, United States Attorney's Office, Chicago, IL, Patricia Leitner, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On August 20, 1997, the plaintiffs filed a four-count amended complaint against the defendants. In Counts I and II, they allege that Janet Reno, Attorney General of the United States, in her official capacity, discriminated and retaliated against them in violation of Title VII, 42 U.S.C. § 2000e *et seq.* In Count IV, they allege that the Drug Enforcement Administration ("DEA") violated their right to privacy as protected by the Privacy Act, 5 U.S.C. § 552a. The plaintiffs voluntarily dismissed Count III against the individual defendants.[1] The two remaining defendants, the Attorney General and the DEA, move to dismiss the other three counts and to strike certain remedies. For the reasons set forth below, the defendants' motions are granted in part and denied in part.

*Background*

The plaintiffs, Michael Flanagan, Norbert Kuksta, Melvin Schabilion, Saul Weinstein, and Francis E. White, were at all relevant times special agents of the DEA in the Chicago, Illinois Field Division. All plaintiffs are Caucasian males. Mr. Weinstein is also Jewish.

The plaintiffs allege the following facts. In or about September, 1994, a female student who attended the DEA Basic Narcotics Training School wrote a letter to Kenneth Cloud, Special Agent–In–Charge in Chicago, reporting that she had become offended by some language that was used during the course of Mr. Schabilion's training sessions. As a result of the letter, the Chicago Field Office conducted an investigation of Mr. Schabilion. Upon review of the investigation and its findings, Mr. Cloud gave Mr. Schabilion a Letter of Reprimand for improper conduct and forwarded the letter to DEA Headquarters for approval. The report and proposed disciplinary action were rejected and a full investigation was opened. Subsequently, Mr. Flanagan, Mr. Kuksta, Mr. Weinstein, and Mr. White became targets of the investigation as well.

Count I alleges that the plaintiffs were discriminated against and harassed based on their sex, male, and their race, Caucasian. Mr. Weinstein further claims that he was discriminated against because he is Jewish. Plaintiffs allege that they were singled out for a disparate and biased disciplinary investigation and ultimate discipline. Count II alleges that DEA management launched its investigation against the plaintiffs in retaliation for objecting to discrimination and for assisting other DEA employees with their discrimination claims. DEA management is alleged to have transferred plaintiffs from the Chicago Field Office and to have taken away their badges, guns, and credentials. Count IV alleges that the DEA violated the plaintiffs' rights under the Privacy Act.

*Motion to Dismiss*

The defendants initially seek to dismiss Counts I, II, and IV for failure to exhaust

---

1. The individual defendants, Thomas A. Constantine, Stephen Greene, Armando Marin, and Steven Casteel, are deleted from the case caption.

administrative remedies. The plaintiffs, however, have alleged that they exhausted their remedies. Consequently, I do not dismiss the counts on this ground.

### A. Count I: Discrimination

In *McDonnell v. Cisneros,* 84 F.3d 256, 257 (7th Cir.1996), the Secretary of Housing and Urban Development ("HUD") received two anonymous letters accusing the plaintiffs, HUD's Regional Inspector General ("IG") for Investigations and the Assistant Regional IG, of lurid job-related sexual misconduct. Because the plaintiffs were employed in the IG's office, which would normally investigate such charges, the Secretary retained Defense Department investigators. *Id.* The investigators "interviewed the plaintiffs and other employees of the [IG's] Office in a hostile and unprofessional manner, indicating to the persons they interviewed their personal belief that the plaintiffs were guilty of the charges made in the anonymous letters." *Id.* at 258. They further conducted their investigation in such manner as to "g[ive] rise to even more lurid rumors, widely circulated within HUD." *Id.* Both plaintiffs were eventually exonerated and filed complaints that the treatment they received during the investigation constituted sexual harassment under Title VII. *Id.*

The Seventh Circuit addressed the question of "whether an investigation of sexual harassment that exceeds the proper limits is itself a form of actionable sexual harassment." *Id.* at 260. The court found that no such cause of action existed for two reasons, one practical and one doctrinal. *Id.* at 261. "The practical objection is that it places the employer on a razor's edge." *Id.* The employer would be liable for failing to investigate allegations of sexual harassment and liable for vigorously investigating such charges. *Id.*

The doctrinal objection revolved around Congress' specific provision with respect to the legal remedies of victims of improper investigations by federal officers. *Id.* If the investigators had told the people who they were interviewing that the plaintiffs had engaged in job-related sexual misconduct, which statements were allegedly false and defamatory, the investigators could have been guilty of defamation. *Id.* The investiga-

tors would have a defense of qualified immunity but the plaintiffs could substitute the United States as a defendant under the Federal Tort Claims Act ("FTCA"), as amended by the Westfall Act. *Id.* The United States, however, is not liable under the FTCA for defamation by its employees. *Id.* The court concluded that to allow the plaintiffs' Title VII claim would be to inappropriately amend the FTCA and circumvent the Westfall Act by allowing a defamation claim. *Id.*

█ Under *McDonnell,* the plaintiffs cannot bring a harassment claim based on the DEA's improper conduct during its investigation into alleged misconduct. The plaintiffs contend, however, that their case can be distinguished from *McDonnell* because they have alleged discrimination on the basis of their gender or religion. The rationale for *McDonnell,* however, extends to discrimination claims. An employer is still placed on "a razor's edge." If it fails to investigate alleged discrimination, it may be liable under Title VII. But if it investigates discrimination, the alleged perpetrator may claim that the employer investigated the allegations against him too vigorously as compared to other similarly situated employees.

In the alternative, the plaintiffs claim that unlike *McDonnell,* where the plaintiffs alleged improper conduct during a warranted and proper investigation into sexual harassment, they allege that the entire DEA investigation was unwarranted and motivated by unlawful bias. *McDonnell,* however, did involve allegations of groundless charges of misconduct. 84 F.3d at 259. The plaintiffs alleged that the anonymous letters were the work of a disgruntled employee. *Id.* at 257. Despite that fact, the Seventh Circuit still found that HUD had to investigate and that there was no claim for harassment based on the investigation.

> Although the complaint was anonymous, the plaintiffs do not argue that their employer was obliged or even entitled to ignore it. Employers who disregard charges of sex-related misconduct by their employees run a considerable risk of being sanctioned for having tolerated sexual harassment. It behooved HUD to investigate the charges against the plaintiffs....

*McDonnell,* 84 F.3d at 260. Consequently, the plaintiffs' discrimination claim falls under

the *McDonnell* holding and Count I is dismissed.

### B. Count II: Retaliation

■ The plaintiffs bring two retaliation claims. First, they contend that the investigation was in retaliation for objecting to discrimination and for assisting other employees with their discrimination claims. The defendants argue that this claim should be dismissed under the *McDonnell* rationale. *McDonnell*, however, recognized that retaliation is independent of discrimination and harassment. *Id.* at 259 ("The two types of claims, harassment (or other employment discrimination) and retaliation for complaining about or opposing the harassment, are independent."). Even though the plaintiffs cannot bring a claim of harassment or discrimination based on the DEA's conduct during the investigation, they can bring a claim of retaliation.

■ Second, the plaintiffs allege that the defendants retaliated against them for filing formal charges of discrimination. The defendants claim that the alleged retaliatory conduct is the same conduct which is the basis of the plaintiffs' discrimination claim. *McDonnell* dismissed a retaliation claim where

> [t]he allegedly retaliatory conduct was merely the continuation of the conduct giving rise to the [harassment] complaints.... In other words, nothing changed when [the plaintiff] filed her [harassment] complaints. There was no ratcheting up of the harassment. Therefore the complaints could not have been the cause of the ostracism, disdain, and ridicule of which she complains in the retaliation count.

*McDonnell*, 84 F.3d at 259.

An analysis of Count II, however, indicates that the plaintiffs alleged conduct other than improper investigation. For example, Mr. Flanagan, Mr. Kuksta, Mr. Schabilion, and Mr. Weinstein all alleged that they were transferred from the Chicago Field Office in retaliation for filing their complaint. Mr. White alleged that DEA management took away his badge, gun, and credentials. These allegations demonstrate that DEA manage-

ment "ratcheted up" the discrimination and harassment such that it constituted retaliation. Thus, I do not dismiss Count II.

### C. Count IV: Privacy Act

■ The defendants argue that this claim is merely a restatement of the Title VII claim and thus should be dismissed under *McDonnell*. In the alternative, the defendants contend that Count IV is preempted by Title VII because it provides the exclusive remedy for claims of discrimination in employment. It relies on the Supreme Court's decision in *Brown v. General Servs. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In that case, the Supreme Court stated that Title VII provided the exclusive remedy for federal employment discrimination and thus the plaintiff could not seek other judicial remedies for his time-barred Title VII racial discrimination claim. *Id.* at 829, 96 S.Ct. 1961.

The plaintiffs allege that the DEA's conduct in investigating the charges was discriminatory and that the DEA disclosed private information in violation of the Privacy Act. These are two separate claims—a privacy violation is not necessarily discriminatory. Furthermore, *Brown* does not preclude a privacy claim. *Brown* merely held that federal employment discrimination claims had to be brought under Title VII. *Id.* It did not hold that conduct underlying a Title VII claim could not also violate other federal statutes. In fact, Privacy Act claims and Title VII claims have been brought together. *See Germane v. Heckler*, 804 F.2d 366 (7th Cir.1986).

This does not end the inquiry. The plaintiffs' privacy action is still limited. They cannot bring claims for violations of 5 U.S.C. § 552a(e)(1), (2), and (5) because the DEA is exempt from the requirements of those sections. *See* 28 C.F.R. §§ 16.98, 16.102. Furthermore, where the DEA is not exempt,[2] some, if not all, of the violations may be barred by the statute of limitations. The plaintiffs filed their initial complaint on March 26, 1997. In their amended complaint, they allege that in or about January, 1995 and continuing thereafter, the DEA violated plaintiffs' rights under the Privacy Act.

---

**2.** The plaintiffs also allege violations of 5 U.S.C. §§ 552a(b) and 552a(e)(6).

The Act, however, has a two-year statute of limitations. 5 U.S.C. § 552a(g)(5). Consequently, I will only consider any violations that occurred on or after March 27, 1995.[3]

### Motion to Strike Remedies

 The defendants move to strike two remedies sought by the plaintiffs. First, the plaintiffs seek to have the Department of Justice ("DOJ") defend them or subsidize their defense in *Markham v. White,* No. 95 C 2065, 1995 WL 669643 (N.D.Ill.1995). If the plaintiffs are being sued in their official capacities, DOJ is required to defend them. If they are being sued in their individual capacities, the decision by DOJ not to defend them is discretionary and unreviewable. *Falkowski v. EEOC,* 764 F.2d 907, 910–11 (D.C.Cir. 1985).

 Second, the plaintiffs seek to enjoin the DEA and other federal agencies from making public statements referring to information contained in any records maintained by the DEA or any other federal agency. The plaintiffs cannot enjoin an agency that is not a party to this suit. They also cannot obtain the requested relief for violation of the Privacy Act. 5 U.S.C. § 552a(g)(4) only provides for actual damages and costs, including attorney's fees, for the violations alleged in this case. This does not mean, however, that the plaintiffs are not entitled to this relief under Title VII. *See* 42 U.S.C. § 2000e–5(g)(1) (allowing "any other equitable relief as the court deems appropriate").

### Conclusion

For the reasons stated above, the defendants' motion to dismiss and motion to strike are granted in part and denied in part.

---

3. The defendants argue that to the extent that the privacy claims are not barred, the plaintiffs are not entitled to a jury trial on those claims. The plaintiffs did not respond to this argument. However,

> [i]t has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government.... [I]f Congress waives the Government's immunity from suit, ... the plaintiff has a right to a trial by jury only where that

right is one of "the terms of [the Government's] consent to be sued." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Congress must "affirmatively and unambiguously" grant that right. *Id.* 453 U.S. at 168, 101 S.Ct. 2698. Since the Privacy Act is silent with respect to the availability of jury trials, the plaintiffs do not have a right to a jury on those claims.