Sheryl L. HALL, Plaintiff,

v.

Hillary Rodham CLINTON,

and

DNC Services Corporation, d/b/a The Democratic National Committee, Defendants.

No. CIV. 99–3281 EGS.

United States District Court, District of Columbia.

March 28, 2001.

Paul J. Orfanedes, Klayman & Associates, PC, Washington, DC, Larry Elliot Klayman, Judicial Watch, Incorporated, Washington, DC, for plaintiff.

Diane Kelleher, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, Lois Bonsal Osler, U.S. Department of Justice, Civil Division, Washington, DC, Martha Elena Rubio, U.S. Department of Justice, Terrorism & Violent Crime, Washington, DC, for Hillary Rodham Clinton, defendant.

Joseph Eric Sandler, Sandler & Reiff, P.C., Washington, DC, for DNC Services Corp., defendant.

## MEMORANDUM OPINION & ORDER

SULLIVAN, District Judge.

### I. Introduction

Plaintiff Sheryl Hall is a former computer systems manager for the White House. Hall and other White House employees were allegedly instructed to create a partisan, political database on Democratic contributors and fundraising using government staff and resources. Hall alleges that after she complained that this practice violated the Hatch Political Activity Act, 18 U.S.C. § 594 *et seq*, defendant Hillary Rodham Clinton and others conspired to force her out of her job. Hall claims that she suffered damages as a result of this treatment, including emotional distress and stress-related physical ailments.

Hall commenced this action against Clinton and the Democratic National Committee ("DNC"). Specifically, she sued Clinton for tortious interference with contractual relations and intentional infliction of emotional distress. She also sued DNC alleging civil conspiracy and, pursuant to section 1985(1), conspiracy to injure her on account of the lawful discharge of her duties.

Hall brought an earlier case in the Eastern District of Virginia, *Hall v. Clinton*, No. 99–694–A ("Hall I"), which involved the same facts but stated claims under different legal theories. The Eastern District of Virginia dismissed on two alternate grounds: (1) the court had no subject matter jurisdiction due to preemption under the Civil Service Reform Act, 5 U.S.C. §§ 1201 *et seq.* ("CSRA"); and (2) failure to state a claim upon which relief can be granted. *See Hall I*, No. 99–469–A December 3, 1999 Order (E.D.Va.). The Court of Appeals for the Fourth Circuit affirmed. *See Hall v. Clinton*, 235 F.3d 202 (4th Cir.2000).

Clinton and DNC filed motions to dismiss this case. Hall opposes both motions and filed a motion to disqualify the United States Department of Justice ("DOJ") from representing Clinton. Upon consideration of Hall's motion to disqualify DOJ, the opposition thereto, and the arguments in court, the motion to disqualify DOJ from representing Clinton is **DENIED**. Further, upon consideration of the two motions to dismiss, and the oppositions thereto, each defendant's motion to dismiss

is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

## II. Hall's Motion to Disqualify DOJ and to Strike the Pleadings Filed on Clinton's Behalf.

Early in this case, Clinton indicated that she was seeking representation from DOJ under 28 C.F.R. § 50.15(a)(1), which authorizes representation for federal employees sued for activity within the scope of employment and where representation is deemed in the interest of the United States.[1] However, Clinton now states that DOJ is not providing her with representation pursuant to 28 C.F.R. § 50.15(a)(1), but, rather, under the department's broader authorization to provide representation to protect U.S. interests. *See* 28 U.S.C. §§ 516, *517*. Specifically, 28 U.S.C. § 516 gives the Attorney General responsibility for the conduct of litigation in which the U.S. is a party or U.S. interests are at stake. Section 517 states that the "Solicitor General, or any officer of the Department of Justice, may ... attend to the interests of the United States in a suit pending in a court of the United States...."

■ DOJ contends that the department has unreviewable authority to decide who to represent under 28 U.S.C. § 517, citing to *Falkowski v. EEOC*, 764 F.2d 907, 911 (D.C.Cir.1985). *Falkowski* reviewed the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821, 835, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). There, the Supreme Court held that the FDA's decision not to regulate lethal injections was unre-

---

1. Hall contends that Clinton is not eligible for such representation because she is not an employee or officer as defined in the federal code. *See* 5 U.S.C. § 2104, 2105. DOJ argues that the former First Lady is a "quasi" or "de facto" employee. DOJ cites the D.C. Circuit case that found Clinton to be a de facto employee for purposes of the Federal

Advisory Committee Act, *Assn. of Amer. Physicians and Surgeons v. Clinton*, 997 F.2d 898 (D.C.Cir.1993), as well as the congressional authorization for the spouse of the president "in connection with assistance provided by such spouse to the President in the discharge of the President's duties and responsibilities." 3 U.S.C. § 105(e).

**4**

viewable because, like a decision not to prosecute, it was committed to the agency's sole discretion and there was no law for a reviewing court to apply. Accordingly, the Circuit held that DOJ's decision not to provide legal representation under 28 U.S.C. § 517 was also unreviewable. *See Falkowski,* 764 F.2d at 911.

Hall challenges this basis for representation arguing that the government has no interest here because this is a private tort action between Hall and Clinton. Hall cites the cautionary language of *In re Debs,* 158 U.S. 564, 586, 15 S.Ct. 900, 39 L.Ed. 1092 (1895), that "it is not the province of the government to interfere in any mere matter of private controversy between individuals, or to use its great powers to enforce the rights of one against another."

Before reaching the merits of Hall's argument, the Court must determine whether it can review DOJ's decision to represent Clinton. If this were a decision *not* to provide representation then *Falkowski* would settle the question. *See e.g., Flanagan v. Reno,* 8 F.Supp.2d 1049 (N.D.Ill. 1998); *Guiken Corp. v. I.R.S.,* 1987 WL 15112 (S.D.N.Y. July 28, 1987). However, *Heckler* holds that "when an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers." *Heckler,* 470 U.S. at 832, 105 S.Ct. 1649. This suggests that a decision to act may be reviewable, even though a decision not to act is not reviewable.

To support its position, DOJ cites *Brawer v. Horowitz,* 535 F.2d 830 (3rd Cir. 1976), which upheld DOJ's decision to rep-

resent a non-government defendant in a civil case where the case was deemed to implicate the interests of the United States. That case involved a criminal informant who was subsequently sued in a civil action for an alleged conspiracy to use perjured testimony. The *Brawer* Court dismissed the contention that DOJ had no authority to represent a non-government defendant in a civil suit as "approach[ing] the frivolous," noting that the only limitation in 28 U.S.C. § 517 is that an interest of the United States be at stake. *Id.* at 836. Further, that court found that the United States did have an interest in ensuring that criminal informants are free from the threat of harassing civil suits due to their testimony. *See id.*[2]

DOJ also cites, *Booth v. Fletcher,* 101 F.2d 676 (D.C.Cir.1938), that underscores the breadth of the attorney general's discretion to determine the interests of the United States under the predecessor statute to §§ 516, 517. The *Booth* Court noted that the Attorney General is empowered to provide representation "whenever in his opinion those interests may be jeopardized." *Id.* at 681. The Circuit in *Booth* also noted that Congress has tacitly sanctioned the appearance of DOJ in many cases between private persons where a U.S. interest is involved. *See id.* at 682. Thus, it appears that the discretion afforded to the attorney general under §§ 516, 517 is as extensive as contemplated by DOJ.

Accordingly, the Court concludes that a decision to provide representation subject to § 517 is non-reviewable or, alternatively, that the government has articulated a sufficient interest to pass muster under the flexible mandate of that statute.

2. In *Brawer,* the court made a determination that the interests were implicated. However, that case was decided before *Heckler v. Cha-*

*ney,* and DOJ argues that it is no longer appropriate for a court to make such an independent determination.

## III. Clinton's Motion to Dismiss

■ Clinton argues that both claim and issue preclusion bar this suit as to her because *Hall I* was brought and dismissed. *See Jack Faucett Assocs., Inc. v. ATT*, 744 F.2d 118, 125 (D.C.Cir.1984). A judgment that subject matter jurisdiction is lacking constitutes res judicata as to that jurisdictional issue. *See GAF Corp. v. United States*, 818 F.2d 901, 912 n. 72 (D.C.Cir. 1987). In *Hall I*, Hall sued Clinton and others under § 1985(1) and the Fifth Amendment. The Fourth Circuit held that CSRA preempted these counts and upheld the District Court's dismissal of these claims for lack of subject matter jurisdiction. *See Hall I*, 235 F.2d at 205.

Hall contends, however, that this case does not present the same issues as *Hall I* because she is alleging common law tort claims against Clinton in this case whereas in the earlier case Clinton was charged with conspiracy under a federal statute as well as a constitutional violation. However, the holding in *Hall I* that subject matter jurisdiction does not exist does not hinge on Hall's pleading federal statutory and constitutional law violations, rather than tortious conduct. Rather, the Eastern District of Virginia held that the CSRA constituted the sole remedy for the alleged *conduct* at issue. *See Hall I*, at 6; see also *Hall I*, 235 F.3d at 205 (holding that "the salient fact here is that the wrongful acts Hall alleges were taken against her arose out of her federal employment relationship").

In *Hall I*, Hall disputed that the CSRA applied to conduct by Clinton and other defendants because they were not her supervisors and allegedly did not have authority to "take, direct others to take, recommend or approve any personnel action"

as the CSRA requires. *Hall I* at 6 (internal citations omitted). The court refuted this contention, finding that the defendants' conduct was employment related and otherwise within the scope of the CSRA. See *id.* The court found that Clinton and the other defendants in that case must have the requisite authority to influence Hall's job status or else Hall's claim would fail for failure to state a claim upon which relief can be granted. *See id.* at 7.

■ The Eastern District of Virginia's holding that it does not have subject matter jurisdiction over Hall's claims is binding on this court in any case brought by Hall against Clinton arising from her previous employment with the White House. Furthermore, this Court holds that in this jurisdiction the CSRA provides the sole remedy for the actions by Clinton in this case. Congress intended for the CSRA to be a comprehensive remedy for federal employees with individualized job grievances. *See e.g., Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Spagnola v. Mathis*, 809 F.2d 16, 30 (D.C.Cir.1986); *Cox v. Henzy*, 124 F.3d 186 (3rd Cir.1997) *aff'g* 1997 WL 164270 (E.D.Pa.1997); *Jones v. Tennessee Valley Authority*, 948 F.2d 258 (6th Cir.1991). Moreover, the CSRA is the exclusive remedy, even if it affords incomplete relief. *See Mittleman v. United States Treasury*, 773 F.Supp. 442 (D.D.C.1991); *Desmond v. Dept. Of Defense*, 989 F.2d 484, 1993 WL 88196 (1st Cir.1993). Accordingly, Halls claim against Clinton must be dismissed for a lack of subject matter jurisdiction.[3]

## IV. DNC's Motion to Dismiss

A. *§ 1985(1) Claim*

■ The DNC argues that the § 1985(1) claim should be barred under

---

**3.** The Court need not reach the issue of whether Hall's claims are barred by the doc-

trine of claim preclusion.

the doctrine of issue preclusion because the Eastern District of Virginia dismissed the § 1985(1) charges against other defendants in *Hall I* arising from the same disputed incidents. That Court stated that the § 1985(1) claim was barred because the CSRA constituted Hall's sole remedy for her alleged mistreatment. Although the DNC was not a party to that suit at the time of the ruling, it nevertheless contends that Hall is barred from relitigating this issue under offensive collateral estoppel. Hall argues that preclusion does not apply because she is bringing the charge against a private entity, rather than an employer.

The Court is dubious that the distinction matters here. In *Hall I*, Hall argued that Clinton was a private party, and the court nonetheless held that the CSRA precluded a 1985(1) action against her. However, assuming arguendo that the distinction is sufficient to prevent issue preclusion, the Court nonetheless finds that the CSRA preempts a § 1985(1) claim against the DNC for substantially the same reasons why CSRA preempts a § 1985(1) claim against Clinton. While there may be some scenario in which Hall could pursue a separate § 1985(1) claim against a non-government party, the Court finds that Hall cannot do so in this case, where she has not pled any direct negative action by an outside party. Rather, the conduct at issue here is federal personnel actions and such actions are squarely within the scope of the CSRA, even if that statute does not provide a basis to sue the DNC. *See Bush,* 462 U.S. at 388–90, 103 S.Ct. 2404 (refusing to allow a Bivens action even though "existing remedies [did] not provide complete relief").

■ Moreover, it appears that Hall has filed her complaint outside the statute of limitations. The parties agree that the relevant statute of limitations for a § 1985(1) violation in this jurisdiction is three years. The latest incident identified in the complaint took place in the fall of 1996, more than three years before Hall filed her complaint dated December 13, 1999. Hall argues that the clock should not begin to run until November 1998, when the House Government Reform and Oversight Committee issued a report regarding the development of the White House database. Hall contends that it was not until the release of this report that she knew the cause of the harm she had allegedly suffered, particularly the identity of the individuals involved. Hall clearly knew all she needed to know since 1993 when she allegedly complained about a violation of the Hatch Act if she were to carry out the wishes of Clinton and the DNC with respect to the computer database.

### B.   *Civil Conspiracy*

■■   Hall also charged DNC with civil conspiracy to commit unlawful acts by converting government resources and utilizing government personnel to create a database for use as a partisan tool. Hall argues that DNC is vicariously liable for Clinton's unlawful conduct, after *Halberstam v. Welch,* 705 F.2d 472 (D.C.Cir.1983). However, DNC argues, and the Court agrees, that the underlying conduct is not actionable and that "as a matter of substantive law, one cannot be liable for a conspiracy that does not have as its object an actionable wrong." *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1494 (D.C.Cir. 1989). Thus, a violation of the Hatch Act, even if true, cannot be the basis of a privately actionable tort.

### V.   Conclusion

For the reasons stated, Hall's motion to disqualify DOJ is **DENIED**; Clinton's mo-

tion to dismiss is **GRANTED**; and DNC's motion to dismiss is **GRANTED**.

An appropriate order shall accompany this opinion.