William Vance **TURNER**, Plaintiff,

v.

Officer Roderick **SCHULTZ**, Officer Michael Lavallee, Officer James Bond, Lieutenant David D. Armstrong, Lieutenant FNU King, Captain M. Mooneyham, Assistant Warden Greco, Warden Joel H. Knowles, Lieutenant Rowe, Lieutenant K. Scott, Officer E. Wildergrube, Officer T. Martinez, Charolette Gutierrez, Captain Terry Hines, and Other Unknown Agents of the Federal Bureau of Prisons, Defendants.

Officer Roderick Schultz, Officer Michael Lavallee, Officer James Bond, Officer Charles Rowe, Officer Eric Wildgrube, Officer Charlotte Gutierrez, and Officer Terry Hines, Third–Party Plaintiffs,

v.

The United States, Third–Party Defendant.

No. CIV. A. 99–B–2232.

United States District Court, D. Colorado.

Feb. 20, 2002.

Eugene Scott Baroway, Baroway, Porter & Thomas, Englewood, CO, for Plaintiff.

Roderick Schultz, Denver, CO, pro se.

Robert M. Liechty, Anthony John Fabian, Cross & Liechty, PC, Denver, CO, Tara Kim Weinman, Edmund Martin Kennedy, Hall & Evans, Denver, CO, Gilbert Orlando Montoya, Jr., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiff, William Vance Turner, brings this *Bivens* action alleging claims for relief against current and former employees of the United States Bureau of Prisons (collectively "Defendants"). Defendants Schultz, Lavallee, Bond, Rowe, Wildgrube, Gutierrez, and Hines bring a Third–Party Complaint against Third–Party Defendant the United States for representation and

indemnification. The United States moves to dismiss the cross-claims. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons set forth below, I grant the government's motion.

## I. Facts and Procedural History

The alleged facts in this case are set out in *Turner v. Schultz*, 130 F.Supp.2d 1216 (D.Colo.2001) and need not be fully repeated here. Mr. Turner is a federal prisoner housed in protective custody in Florence, Colorado. Defendants are or were employees of the United States Bureau of Prisons assigned to Florence. Mr. Turner alleges that Defendants were members of a conspiracy of guards and supervisors known as "the Cowboys" who conspired to physically assault prisoners that they felt were disciplinary problems and fabricate incident reports to make it appear as if the assaults were a response to violent behavior by the prisoners. Mr. Turner alleges that he was repeatedly physically assaulted by the Defendants, and Defendants then filed false reports with the United States Bureau of Prisons alleging that Mr. Turner assaulted them and that his injuries were caused when he resisted officers' attempts to subdue him.

A number of guards were indicted for their actions as members of the Cowboys. Defendants Lavallee, Schultz, and Bond were indicted and charged with violations of 18 U.S.C. §§ 241, 242, & 2 for assaulting Mr. Turner and other inmates. *See* 00–CR–481–D. No disposition has been reached in that case. Defendant Armstrong was separately charged and pled guilty on July 13, 1999 to conspiring against the rights of citizens in violation of 18 U.S.C. § 241. He has not yet been sentenced. *See* 99–CR–190–D. Defendant Gutierrez was also separately charged and pled guilty on July 21, 2000 to deprivation of civil rights under color of law in violation of 18 U.S.C. § 242. She

has not yet been sentenced. *See* 00–CR–299–MW.

On April 24, 2000 an Assistant United States Attorney filed a third unopposed motion on behalf of Defendants sued in their individual capacities, including Defendants Schultz, Lavallee, and Gutierrez, to extend time to answer in order to allow Defendants to obtain counsel. In his motion, the Assistant U.S. Attorney indicated that the United States was conditionally representing Defendants for purposes of that motion only, pursuant to 28 C.F.R. § 50.15(a)(1). The motion suggests that the United States declined to represent Defendants in their individual capacities, as it determined that it was not in its best interests to do so.

On April 12, 2001 Defendants Schultz, Lavallee, Bond, Rowe, Wildgrube, Gutierrez, and Hines brought a Third–Party Complaint against the United States. The Third–Party Complaint alleges that these Defendants were employees of the United States at the time of the alleged acts, that the United States declined to provide a defense for or indemnification of the Defendants, and demands payment of their defense costs as well as indemnification against any judgment that might be entered against them.

## II. Motion to Dismiss

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are

accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999).

Fed.R.Civ.P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or the merits of the case. Thus, one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed. R. Civ. P 8(a), which sets forth the requirements for pleading a claim in federal court. Fed. R. Civ. P 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

The United States moves to dismiss the Third–Party Complaint in its entirety. I consider the claims for payment of defense costs and indemnification separately.

### A. Payment of Defense Costs

The United States first moves to dismiss the claim for payment of defense costs. The United States argues that its decision not to provide or pay for Defendants' defense is a non-reviewable agency decision. I agree.

 Under the Administrative Procedure Act ("APA"), "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review there-

of." 5 U.S.C. § 702. The provisions of the APA are applicable "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). Section 701(a)(2) "makes it clear that 'review is not to be had' in those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) (citations omitted). However, "[j]udicial review of final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), *superceded on other grounds by* 42 U.S.C. § 405. A determination of whether agency action is subject to judicial review under § 701 of the APA is a jurisdictional issue. *See Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1448 (10th Cir.1994).

Representation of federal employees is governed initially by 28 U.S.C. § 517. Under that statute, the United States, through the Department of Justice ("DOJ"), may intercede in pending cases to protect its interests.

> The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, *or to attend to any other interest of the United States.*

28 U.S.C. § 517 (emphasis added). The Department of Justice has promulgated regulations to determine when to furnish

counsel to a federal employee sued in his or her individual capacity:

> [A] federal employee ... may be provided representation in civil, criminal and Congressional proceedings in which he is sued, subpoenaed, or charged in his individual capacity, not covered by § 15.1 of this chapter, when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment *and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States.*

28 C.F.R. § 50.15(a) (emphasis added). The regulation provide a series of factors that must be considered and procedures that must be followed in the event of a request for representation. *See id.* at § 50.15(a)(1)-(12). The regulation stipulates, however, that:

> Representation is not available to a federal employee whenever:
>
> (1) The conduct with regard to which the employee desires representation does not reasonably appear to have been performed within the scope of his employment with the federal government;
>
> (2) *It is otherwise determined by the Department that it is not in the interest of the United States to provide representation to the employee.*

*See id.* at § 50.15(b)(1)-(2). "Congress has provided no further guide to exercise of this authority, however, and the Attorney General has imposed no self-restraint through regulation or practice." *Falkowski v. Equal Employment Opportunity Comm'n,* 783 F.2d 252, 253 (D.C.Cir.1986) (per curiam) (footnote omitted). The question, therefore, is whether the Court has jurisdiction to review a decision by the Department of Justice that it is not in the interest of the United States to provide representation for an employee.

Neither the Supreme Court nor the Tenth Circuit has directly addressed the reviewability of decisions to deny counsel to government employees. The Supreme Court has, however, addressed the reviewability of other administrative decisions on several occasions. In *Heckler v. Chaney,* 470 U.S. 821, 835, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) the Supreme Court held that the FDA's decision not to regulate lethal injections was not reviewable because it was committed to the agency's sole discretion and there was no law for a reviewing court to apply. In *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Supreme Court addressed a statute which allowed termination of CIA employees whenever the Director " 'shall *deem* such termination necessary or advisable in the interests of the United States.' " *Id.* at 600, 108 S.Ct. 2047 (citing 50 U.S.C. § 403(c) (emphasis added)). The Court held the statute unreviewable, distinguishing it from a conceivably reviewable statute which would allow termination whenever "the dismissal *is* necessary or advisable to those interests." *Id.* Finally, in *Lincoln v. Vigil,* 508 U.S. 182, 191, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) a group of handicapped Indian children brought suit challenging a decision by the Indian Health Services to cancel a treatment program. The Court held that because funds were allocated to the agency via a lump-sum appropriation, and neither the statute nor the legislative history placed restrictions on the use of the funds, the spending decision was committed solely to agency discretion. Provided that the agency allocates the funds to meet permissible statutory objectives, courts may not intrude under 5 U.S.C. § 701(a)(2). *See id.* at 191–92, 113 S.Ct. 2024.

Prior to *Heckler v. Chaney,* 470 U.S. 821, 835, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the District of Columbia Circuit addressed whether a decision by DOJ not

to provide representation for an employee was a reviewable decision under the APA. In *Falkowski v. Equal Employment Opportunity Comm'n*, 719 F.2d 470, 480 & n. 16 (D.C.Cir.1983) the plaintiff, a government employee, alleged that the Department of Justice acted in an arbitrary and capricious manner by denying her request for legal counsel in an action brought against her by a subordinate. The Court held that a genuine issue of material fact existed on this point, rejecting an argument by DOJ that the decision was an unreviewable agency action under 5 U.S.C. § 701(a)(2). Instead, it held that the district court could review the stated reasons for the denial without running afoul of the APA.

On appeal, the Supreme Court vacated and remanded for further consideration in light of *Heckler v. Chaney. See United States Dep't of Justice v. Falkowski*, 471 U.S. 1001, 105 S.Ct. 1860, 85 L.Ed.2d 155 (1985). On remand the Circuit Court affirmed in part and reversed in part, holding that a decision to withhold counsel under 28 U.S.C. § 517 was an unreviewable agency decision. *See Falkowski v. Equal Employment Opportunity Comm'n*, 764 F.2d 907 (1985), *petition for reh'g denied*, 783 F.2d 252 (D.C.Cir.), *cert. denied sub nom. Falkowski v. United States Dep't of Justice*, 478 U.S. 1014, 106 S.Ct. 3319, 92 L.Ed.2d 727 (1986). In reaching this conclusion and in denying a petition for rehearing, the Circuit Court relied on the extreme breadth of the charge given in the statute, the lengthy history of discretionary authority enjoyed by the Attorney General in determining whether to provide counsel for a federal employee, and DOJ's need to balance its limited resources against its broad interests. Other courts have since followed suit. *See Hall v. Clinton*, 143 F.Supp.2d 1 (D.D.C.2001) (suggesting that DOJ's decision to represent a party may be reviewable, although its decision not to act is not reviewable); *Wooten*

*v. Hudson*, 71 F.Supp.2d 1149, 1151 (E.D.Okla.1999) (court cannot review the decision of the United States declining to provide legal representation to a party, only the certification for substitution purposes under the FTCA); *Ryan v. United States*, 227 Ct.Cl. 711, 713–14, 1981 WL 21419 (1981) (denying claim for reimbursement of attorney fees and holding that "Federal employees are therefore provided with legal counsel in order to protect the *interests of the Government*, not the individual interests of the employee. The Justice Department clearly has no obligation to a particular employee, and thus we find no merit in plaintiff's claim that he was entitled to counsel . . . .").

The Tenth Circuit has repeatedly considered whether 5 U.S.C. § 701(a)(2) rendered a particular agency's administrative decision unreviewable. *See, e.g., McAlpine v. United States*, 112 F.3d 1429 (10th Cir. 1997) (landowner may seek review of Secretary of the Interior's denial of application to take land into trust status under Indian Reorganization Act); *Bd. of County Comm'rs of County of Adams v. Isaac*, 18 F.3d 1492, 1498 (10th Cir.1994) (Federal Aviation Administration's refusal to approve and partially fund construction of facilities for air cargo hub was not reviewable, as "reasonably necessary for air commerce" standard in statute does not provide the court with a justiciable standard of review); *Selman v. United States*, 941 F.2d 1060 (10th Cir.1991) (language, structure and legislative history of I.R.C. § 6404(e)(1) indicate that Congress meant to commit the abatement of interest to the Secretary's discretion and therefore, 5 U.S.C. § 701(a)(2) precludes judicial review). However, the Tenth Circuit has not addressed the reviewability of DOJ decisions to deny representation to employees.

Additionally, although no district court in the Tenth Circuit has issued a published

opinion on this issue, several have come to the conclusion that a decision by DOJ to decline representation is unreviewable. In my March 13, 2001 Order in *Verdecia v. Holt,* case number 98–B–23–535, I concluded on *de novo* review that jurisdiction was lacking over a third-party complaint seeking judicial review of DOJ's decision to withdraw representation, and adopted Magistrate Judge Coan's analysis and recommendation on the issue. In his January 26, 2001 Order, Judge Sparr concluded in *Bryant v. Hines,* case number 97–S–891, that third-party plaintiffs are not entitled to judicial review of the Attorney General's decision to withdraw legal representation. Finally, in *Collins v. Bureau of Prisons,* case number 97–M–1533, Judge Matsch issued an Order on February 9, 2000 adopting Magistrate Judge Schlatter's analysis and recommendation and dismissing a challenge to DOJ's decision to refuse representation to a federal employee as not reviewable under the APA.

The same conclusion is warranted here. 28 U.S.C. § 517 uses permissive language, stating that a DOJ officer *"may* be sent." *Id.* (emphasis added). The officer's mandate is to "attend to the interests of the United States" not to the interests of governmental employees. *Id.* Likewise the regulations are permissive, stating that an employee *"may* be provided representation." 28 C.F.R. § 50.15(a) (emphasis added). In order for that representation to occur the Attorney General or his designee is alone charged with determining that "providing representation would otherwise be in the interest of the United States." *Id.* Whether or not the procedures outlined in the § 50.15(a)(1)-(12) are followed, DOJ may decline representation if "[i]t is otherwise determined *by the Department* that it is not in the interest of the United States to provide representation to the employee." *Id.* at § 50.15(b)(2) (emphasis added). The decision, by the terms of the regulation, is left to the Department. Congress

has not in any way circumscribed DOJ's discretion to allocate its legal resources by putting restrictions in the statute. *See Lincoln v. Vigil,* 508 U.S. 182, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993). This is further evidenced, as noted in *Falkowski v. Equal Employment Opportunity Comm'n,* 783 F.2d 252, 253 (D.C.Cir.1986), by the fact that DOJ has enjoyed a lengthy history of discretionary authority in representation decisions. Further, the statute gives no guidance to the Courts regarding what is or is not in the interests of the United States. Thus, the statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Vigil,* 508 U.S. at 191, 113 S.Ct. 2024. I may therefore take the statute as committing the decision-making to the agency's judgment absolutely. *See id.;* 5 U.S.C. § 701(a)(2).

The Defendants here acknowledge the weight of authority in support of this conclusion, but argue that *Falkowski* was wrongly decided. The Defendants first argue that *Falkowski* misunderstood the applicable factors. I disagree. Defendants point to the common law which requires employers to defend employees who cause harm to third parties, and argue that this common law should have been considered by the *Falkowski* Court. However, the Defendants misunderstand the pertinent analysis. Congress has removed the issue from the realm of common law by virtue of statute, and the question is whether actions taken under that statute are reviewable. Thus, the *Falkowski* Court did not err in examining the law through a statutory lens rather than the common law of torts.

Next, the Officers argue that *Webster v. Doe,* as interpreted by the Tenth Circuit in *Mount Evans Co. v. Madigan* should control. I disagree. As discussed above, *Webster v. Doe,* 486 U.S. 592, 108 S.Ct.

2047, 100 L.Ed.2d 632 (1988) came after *Falkowski*. In *Webster*, the Supreme Court addressed a statute which allowed termination of a CIA employee whenever the Director "shall *deem* such termination necessary or advisable in the interests of the United States." *Id.* at 600, 108 S.Ct. 2047 (citing 50 U.S.C. § 403(c) (emphasis added)). The Court held the statute unreviewable, distinguishing it from a hypothetically reviewable statute which would allow termination whenever "the dismissal *is* necessary or advisable to those interests." *Id.*

In *Mount Evans Co. v. Madigan*, 14 F.3d 1444 (10th Cir.1994) the Court considered a decision by the United States Forest Service not to rebuild a facility after it was destroyed by fire. The decision was made pursuant to 16 U.S.C. § 579c, which states that,

> Any moneys received ... with respect to lands under the administration of the Forest Service ... as a result of a judgment, compromise, or settlement of any claim, involving ... damage to lands or improvements, shall be covered into the Treasury and are hereby appropriated and made available ... to cover the cost ... of any improvement, protection, or rehabilitation work on lands ... rendered necessary by the action which led to the forfeiture, judgment, compromise, or settlement ....

The Court was first required to determine whether the Forest Service's actions taken pursuant to 16 U.S.C. § 579c are subject to judicial review under 5 U.S.C. § 701(a)(2). *See Mount Evans* at 1448–49. The Court noted Supreme Court and Tenth Circuit decisions in which allocation of funds from a lump-sum appropriation statute, when the statute does not restrict what can be done with those funds, is committed to agency discretion and unreviewable under 5 U.S.C. § 701(a)(2). *See Lincoln v. Vigil*, 508 U.S. 182, 191, 113

S.Ct. 2024, 124 L.Ed.2d 101 (1993); *Sierra Club v. Yeutter*, 911 F.2d 1405, 1413 (10th Cir.1990). The Court, however, emphasized the language in 16 U.S.C. § 579c which allocated settlement funds to cover the cost of any work "necessary" and concluded that the statute did not allow the Forest Service to spend the money "it receives in settlement on anything it wishes, but must first ensure that *necessary* improvements to the damaged property have been made." *Id.* at 1450. The Court also drew comparisons to the distinction made in *Webster*. It concluded that

> the Court in *Webster* was clearly attempting to differentiate between the *Webster* statute, which used the word "deem" to "exude [ ] deference to the Director," making the statute unreviewable, from a statute such as § 579c, which uses the word necessary without any deference to the Forest Service's determination of what is necessary, making it reviewable.

*See id.* at 1450. The Tenth Circuit accordingly held that the Forest Service's decision not to rebuild the destroyed structure was not committed entirely to agency discretion and was subject to judicial review.

Defendants are correct that the quoted language could be read to mean that because 28 U.S.C. § 517 lacks language directly indicating that the decision to provide representation is left to the sole discretion of the DOJ, it is reviewable. However, I do not conclude that either *Mount Evans* or *Webster* mandates that conclusion here.

> *Webster* noted that the statute at issue: fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review. Short of permitting cross-examination of the Director concerning his views of the Nation's security and whether the discharged employee

was inimical to those interests, we see no basis on which a reviewing court could properly assess an Agency termination decision.

*Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). The Court then went on to examine the overall structure of the NSA, which gives in the Director broad authority to protect intelligence sources and methods. The ability to dismiss employees was considered by the Court an integral part of that structure, "because the Agency's efficacy, and the Nation's security, depend in large measure on the reliability and trustworthiness of the Agency's employees." *See id.* at 601, 108 S.Ct. 2047.

Similarly, *Falkowski* examined the historical ability of the DOJ to make unfettered representation decisions, as well as the importance of that ability to ensuring the proper use of the "agency's scarce legal resources." *Falkowski*, 764 F.2d 907, 911 (D.C.Cir.1985). Further, unlike the statute considered in *Mount Evans Co. v. Madigan*, 14 F.3d 1444 (10th Cir.1994), the statute here contains neither restrictive language, nor modifying language such as the term "necessary." To the contrary, it mandates that "[r]epresentation is not available to a federal employee whenever . . . It is otherwise determined *by the Department* that it is not in the interest of the United States to provide representation to the employee." 28 C.F.R. at § 50.15(b)(1)-(2). Thus, as in *Webster*, there is no basis for a reviewing court to properly assess a representation decision, short of cross-examining the Attorney General on his views of the United States' interests and whether representing an employee was inimical to those interests. *See Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). Finally, while both *Webster* and *Mount Evans* compare the statutes at issue to hypothetical statutes with less specific language, neither directly addresses 28 U.S.C. § 517,

nor mandates that a statute such as 28 U.S.C. § 517 be found reviewable. I therefore conclude that neither *Webster* nor *Mount Evans* mandates judicial review of decisions made under 28 U.S.C. § 517.

Defendants next argue that DOJ should be required to explain its reasons for declining representation in a particular case, which it has not done here. Defendants argue that DOJ prevailed in *Falkowski* because there its "contentions [were] sufficient to overcome the presumption of reviewability." *Falkowski v. Equal Employment Opportunity Comm'n*, 764 F.2d 907, 911 (D.C.Cir.1985). Defendants therefore assert that equally convincing reasons for denying representation must be put forward in this case. I again disagree. *Falkowski* did not find that DOJ's reasons for declining representation in *that particular case* were sufficiently weighty. Rather, the Court found that DOJ's *theoretical arguments* for a finding of non-reviewability were sufficiently weighty. DOJ argued that the non-mandatory language of the relevant regulations gave DOJ discretion in deciding who DOJ would represent, that the diversion of DOJ's resources to defending against claims like Ms. Falkowski's would reduce its effectiveness in its congressionally assigned mission of defending other federal employees, and that DOJ is better able to balance the myriad factors bearing upon the decision to provide representation than are the courts. *Id.* at 910–11. It was after outlining these arguments that the Court indicated that those contentions, in light of *Chaney*, were now sufficient "to overcome the presumption of reviewability." *Id.* at 911. The Circuit Court noted that:

> Equally important to the Supreme Court's decision [in *Chaney*] . . . were the superiority of the agency as a decisionmaker on the questions at issue and the absence of any congressional pro-

nouncements cabining the agency's discretion. Because of the applicability of these two latter grounds to this case, DoJ's action is unreviewable.

*Id.* at 911. I find these considerations equally applicable here, and conclude that they serve to buttress my conclusion that the DOJ's refusal to provide legal counsel here is not reviewable.

### B. *Indemnification from Judgment*

The United States next moves to dismiss on the ground that its decision not to indemnify Defendants from any potential judgment is also not justiciable, as it is non-reviewable administrative decision. I again agree. Indemnification of federal employees is governed by 28 C.F.R. § 50.15(c). That regulation provides:

> The Department of Justice may indemnify the defendant Department of Justice employee for any verdict, judgment, or other monetary award which is rendered against such employee, provided that the conduct giving rise to the verdict, judgment, or award was taken within the scope of employment *and that such indemnification is in the interest of the United States, as determined by the Attorney General or his designee.*

28 C.F.R. § 50.15(c)(1) (emphasis added). For the reasons stated in Part IIA, *supra,* I conclude that a decision by the Department of Justice to decline indemnification is a non-reviewable agency decision.

Accordingly, IT IS ORDERED that:

1. Third–Party Defendant The United States' motion to dismiss Defendants' Cross–Claim is GRANTED;

2. Defendants Schultz, Lavallee, Bond, Rowe, Wildgrube, Gutierrez, and Hines' cross-claims for representation and indemnification are DISMISSED;

3. Defendants Schultz, Lavallee, Bond, Rowe, Wildgrube, Gutierrez, and Hines' Third–Party Complaint is DISMISSED; and

4. Costs are awarded to the United States.